UNITED STATES of America, Plaintiff,

v.

Gary S. TUCKER, Defendant.

No. 97 CR 239.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 31, 1997.

Patrick A. Tuite, Arnstein & Lehr, Chicago, IL, for Defendant.

Joan B. Safford, Deputy U.S. Atty., Chicago, IL, for Government.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

### I. INTRODUCTION

This case raises the profound issue of whether the *Ex Post Facto* Clause of the United States Constitution requires this Court to sentence defendant Gary S. Tucker ("Defendant") to less time for more crimes. The answer is no.

On June 11, 1997, pursuant to a written plea agreement, Defendant pleaded guilty to five separate counts of willful failure to file individual income tax returns for the calendar years 1990 through 1994 in violation of 26 U.S.C. § 7203 (1997). Pursuant to paragraph eight of the Plea Agreement, Defendant moves this court to correct perceived errors in the application of the United States Sentencing Guidelines ("Guidelines") to the calculation of his sentencing range in the Pre–sentence Investigation Report ("PSI")

and Plea Agreement. First, Defendant argues that the use of an aggregate tax loss of all five counts to calculate the base offense level under the current Guidelines violates the *Ex Post Facto* Clause of the United States Constitution because three of the five counts occurred before the effective date of the 1993 Guidelines amendments. The 1993 amendments removed from the prior version a one level reduction for willful failure to file a return. Second, Defendant moves for a downward departure in his sentence based on the failure by the Sentencing Commission ("Commission") to take into consideration the particular set of facts presented by Defendant's case when formulating the Guidelines. Third, Defendant moves for a downward departure in his sentence based upon extraordinary personal circumstances.

For the reasons stated below, the Court denies Defendant's motion and adopts the base offense level of 16 as set forth in the PSI and a total offense level of 13, after deducting two levels for Defendant's acceptance of responsibility and one additional level for prompt indication of his intention to plead guilty.

### II. BACKGROUND FACTS

Defendant pleaded guilty to five separate counts of willful failure to file individual income tax returns for calendar years 1990 through 1994. (Plea Agreement ¶¶ 1, 4.) Defendant acknowledges that he also willfully failed to file his federal income tax returns for calendar years 1985 through 1989 and stipulates that this constitutes "relevant conduct" under section 1b1.3 of the Guidelines. (Plea Agreement ¶ 6.)

The tax losses are stated in the Plea Agreement. The tax losses for years 1985 through 1988 are not presently known. (Plea Agreement ¶ 6(c).) The tax loss for 1989 is estimated to be at least $50,000. (Plea Agreement ¶ 6(c).) The tax losses for the remaining years are as follows:

| Year | Amount |
|------|--------|
| 1990 | $ 13,573 |
| 1991 | $ 39,286 |
| 1992 | $ 45,257 |
| 1993 | $ 53,540 |
| 1994 | $ 23,807 |
| Total | $175,463 |

(Plea Agreement ¶ 6(c).) The total tax loss for 1989 through 1994 is $225,463. (Plea Agreement ¶ 6(c).) The parties agree that the tax losses for 1985 through 1988 will not affect the base offense level. (Plea Agreement ¶ 6(c).)

The Plea Agreement is governed by Federal Rule of Criminal Procedure 11(e)(1)(C). The parties agree that Defendant has demonstrated recognition and affirmative acceptance of personal responsibility for his conduct. (Plea Agreement ¶ 7(b).) Defendant provided timely and complete information to the Government concerning his involvement in the crime and promptly informed of his intention to plead guilty. (Plea Agreement ¶ 7(c).) The parties agree that Defendant has no criminal history points.[1] (Plea Agreement ¶ 7(e).) The Government recommends a sentence not exceeding fifteen months imprisonment. (Plea Agreement ¶ 16.)

## III. APPLICATION OF THE CURRENT GUIDELINES DOES NOT VIOLATE THE *EX POST FACTO* CLAUSE

█ The United States Constitution provides that neither Congress nor any state shall pass any *ex post facto* law. Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. The central concern in the *ex post facto* prohibition is the lack of fair warning and governmental restraint when the legislature increases punishment beyond what was in effect at the time the crime was committed. *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). The *Ex Post Facto* Clause assures that legislative acts give fair warning of their effect so that individuals may rely on their meaning until explicitly changed. *Id.* at 28–29, 101 S.Ct. at 964.

█ A criminal law violates the *Ex Post Facto* Clause if two elements are present: first, the law is retrospective, that is, it applies to events that occurred before its enactment; and second, the law disadvantages the offender affected by it. *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). "A law is retrospective if it 'changes the legal consequences of acts

completed before its effective date.'" *Id.* (quoting *Weaver*, 450 U.S. at 31, 101 S.Ct. at 965). An offender is disadvantaged if the revised law increases the punishment imposed for a crime committed prior to the amendment. *Miller*, 482 U.S. at 433, 107 S.Ct. at 2452–53.

Application of a state's substantively revised sentencing guideline to calculate the sentence imposed for a crime committed before the revision's effective date violates the *Ex Post Facto* Clause. *Id.* at 435–36, 107 S.Ct. at 2454. The Seventh Circuit has joined all the circuits in holding that an amendment to the federal Sentencing Guidelines which takes effect after the commission of an offense that works to the offender's detriment is inapplicable under the *Ex Post Facto* Clause. *United States v. Seacott*, 15 F.3d 1380, 1386 (7th Cir.1994).

### A. Application of the Guidelines to Tax Offenses

The base offense level for tax crimes is based on the tax loss—the amount of tax the taxpayer owed and did not pay. United States Sentencing Commission, Guidelines Manual, § 2T1.1(a) (Nov.1995). The offense level is determined by reference to the table in § 2T4.1 that supplies the point level for ranges of dollar amounts. *Id.* The Guidelines in effect prior to the 1993 amendments provided that for failure to file a return the base offense level was "1 level less than the level from § 2T4.1 (Tax Table) corresponding to the tax loss." *See* U.S.S.G.App.C, amend. 491. This reduction is not allowed after the 1993 amendments to the Guidelines. U.S.S.G. § 2T1.1(a).

Under current Guideline section 3D1.2, the total tax loss from all counts is grouped together before referencing the table in section 2T4.1 to determine the base offense level:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially

---

1. Defendant had pleaded guilty to a felony charge of obstruction of justice in Lake County, Illinois, but conviction was not final and sentence had not yet been imposed as of the date of the Plea Agreement. (Plea Agreement ¶ 7(e).)

Defendant was given one criminal history point in the PSI. This leaves Defendant in Criminal History Category I. (Pre–sentence Investigation Report at 5.)

the same harm within the meaning of this rule: ...

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, ... or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Thus, the tax loss from all Defendant's counts are aggregated into a single group to determine the total amount of loss.[2]

### B. Application of the Relevant Conduct Provision

#### 1. Section 1B1.3

Relevant conduct that is part of the same course of conduct factors into the determination of Defendant's base offense level:

§ 1B1.3. *Relevant Conduct (Factors that Determine the Guideline Range )* (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

\* \* \* \* \* \*

that occurred during the commission of the offense of conviction, ...;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that *were part of the same course of conduct or common scheme or plan as the offense of conviction.* (emphasis supplied).

The commentary defines "same course of conduct" as follows: [3]

9. "Common scheme or plan" and "same course of conduct" are two closely related concepts.

\* \* \* \* \* \*

(B) *Same course of conduct.* Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also be a relevant consideration (*e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals*).

U.S.S.G. § 1B1.3, comment. (n. 9) (emphasis supplied).

#### 2. Inclusion of Relevant Conduct in Determining the Sentencing Range for the Count of Conviction Is Not an *Ex Post Facto* Violation

Several circuits have upheld the inclusion of relevant conduct that occurred prior to the effective date of the Guidelines in determining the sentencing range against *ex post facto* challenges. *See United States v. Haddock*, 956 F.2d 1534, 1554 (10th Cir.) ("enhancement of a sentence for a later offense based on losses associated with crimes that were committed prior to the effective date of the Guidelines does not violate the *Ex Post*

---

**2.** Section 2T1.1, failure to file a return, is listed as a section to which the grouping in section 3D1.2 must be applied. U.S.S.G. § 3D1.2(d).

**3.** The Court is bound by the commentary in the Guidelines Manual that interprets or explains a guideline unless it violates the Constitution or a federal statute. *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).

*Facto* clause"), *reh'g granted on other grounds,* 961 F.2d 933 (10th Cir.), *cert. denied,* 506 U.S. 828, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992); *United States v. Cusack,* 901 F.2d 29, 32 (4th Cir.1990) (pre–Guidelines conduct used to calculate amount of drugs); *United States v. Ykema,* 887 F.2d 697, 700 (6th Cir. 1989) (same), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990); *United States v. Allen,* 886 F.2d 143, 145–46 (8th Cir.1989) (same).

For example, in *Ykema* the defendant pleaded guilty to two counts of possession with intent to distribute cocaine. 887 F.2d at 698. The base offense level was determined in part by activities that were committed before the Guidelines took effect, and the defendant argued that his sentence violated the *Ex Post Facto* Clause. *Id.* at 700. The court disagreed, stating:

> Previously, courts have held that an increase in sentence for a repeat offense does not violate the *ex post facto* clause simply because the first offense was committed before the passage of the repeat offender law. This supports the proposition that augmenting punishment for a later offense, based on acts committed before a law is passed, does not violate the *ex post facto* clause.

*Id.*

The Seventh Circuit has upheld application of the relevant conduct provision. *United States v. White,* 888 F.2d 490, 492–93 (7th Cir.1989). In *White,* although there were no *ex post facto* concerns, the court held that drug quantities that were not part of the count of conviction but were part of the same course of conduct as the offense of conviction must be included as relevant conduct. *Id.* The Seventh Circuit agrees with other circuits that "enhancement of a sentence under § 1B1.3 for a post–Guidelines offense based on relevant conduct associated with crimes that were committed prior to the effective date of the Guidelines does not violate the *ex post facto* clause." *United States v. Jackson,* No.91–3063, 1994 WL 420067, at *4 (7th Cir. 1994) (unpublished disposition).

The above cases addressing relevant conduct and *ex post facto* concerns confronted only the enhancement of offenses with relevant conduct; they do not address the simultaneous sentencing of pre and post Guideline

offenses by grouping those offenses for sentencing under the Guidelines. There is a difference between conduct that constitutes relevant conduct and grouped conduct that is the basis for the offenses of conviction which are subject to sentencing as closely related counts.

As discussed earlier, under Guideline section 3D1.2(d), the tax loss from all closely related counts of conviction are grouped together. In this case, the amended Guidelines group all the losses from 1990 through 1994. The losses from 1990 through 1992 do not constitute relevant conduct. Losses that constitute relevant conduct are from any other offenses for which Defendant is not being sentenced, for example, conduct from offenses for which Defendant was not charged or not convicted. *See* U.S.S.G. § 1B1.3, comment. (n. 3). In this case, Defendant's failure to file tax returns from 1985 through 1989 constitutes relevant conduct because it is part of the same course of conduct as his counts of conviction. The parties agree that only the 1989 tax loss of $50,000 will be factored in as relevant conduct.

### C. The Dispute: Application of the Current Guidelines to Defendant's Pre–Amendment Offenses

Armed with the above understanding of how the base offense level is normally determined for willful failures to file a tax return, the Court now turns to the issue in dispute: which Guidelines Manual to apply to Defendant's 1990 through 1992 counts. Defendant does not dispute that the current Guidelines are applicable to his 1993 and 1994 counts.

The Government argues that only the current edition of the Guidelines may be used to determine Defendant's base offense level for all five counts. The calculation in the Plea Agreement totals the tax losses from all five counts plus the 1989 loss of $50,000 to arrive at a total tax loss of $225,463. This loss corresponds to a base offense level of 16. *See* U.S.S.G. § 2T4.1(K). The PSI sets forth a two level reduction for acceptance of responsibility and a one level reduction for an early plea. *See* U.S.S.G. §§ 3E1.1(a), (b). The resulting total offense level of 13 with no criminal history translates into a sentencing

range of twelve to eighteen months. *See* U.S.S.G. § 5A. A defendant with a total offense level of 13 is not eligible for a split sentence. *See* U.S.S.G. § 5C1.1.

Defendant argues that application of the current Guidelines violates the *Ex Post Facto* Clause because it denies Defendant the benefit of the one level reduction provided in the Guidelines in effect when the 1990 through 1992 offenses were committed. *See* U.S.S.G.App. C, amend. 491. Defendant contends that the tax losses must be divided into two groups: (1) the tax loss from the 1990 through 1992 pre-amendment offenses to which the prior version of the Guidelines should apply; and (2) the tax loss from the 1993 through 1994 post–amendment offenses to which the current Guidelines should apply. Defendant adds the loss that constitutes relevant conduct only to the first group. Defendant thus arrives at a tax loss of $148,116 to which the prior Guidelines apply and a tax loss of $77,347 to which the current Guidelines apply. Under this analysis, Defendant's base level for the first group is 12 (13 from the pre-amendment tax table, App. C, amend, 491, § 2T4.1(H), less the 1 level reduction). For the remaining two counts, using the current Guidelines, Defendant's base offense level would be 14. *See* U.S.S.G. § 2T4.1(I). Defendant's combined offense level for both groups would be 14. *See* U.S.S.G. § 3D1.4. With the two level reduction for acceptance of responsibility,[4] Defendant's total adjusted offense level of 12 translates into a sentencing range often to sixteen months. *See* U.S.S.G. § 5A. A defendant with a total offense level of 12 is eligible for a split sentence. U.S.S.G. § 5C1.1(d)(2).

### 1. The Sentencing Commission's One Book Rule in Section 1B1.11(b)(2)

■ The Court must apply the Guidelines Manual in effect at the time of sentencing unless the Court determines that to do so would violate the *Ex Post Facto* Clause. U.S.S.G. § 1B1.11(a), (b)(1). The Guidelines Manual selected must be applied in its entirety. U.S.S.G. § 1B1.11(b)(2). That is, the Court must not apply one Guideline section from one edition and another section from a

different edition. *Id.* This is known as the "one book rule."

■ The Seventh Circuit has joined several circuits in upholding the one book rule. *United States v. Anderson,* 61 F.3d 1290, 1301 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995); *see also United States v. Corrado,* 53 F.3d 620, 625 (3rd Cir.1995) (collecting cases). In *Anderson,* the defendant was convicted of twenty counts of possession of piperidine and sentenced under the Guidelines in effect at sentencing. 61 F.3d at 1294. His base offense level was enhanced by two points for possession of a firearm. *Id.* Because the Guidelines in effect at sentencing resulted in a lower base offense level than did the Guidelines in effect when he committed his crimes, the defendant did not contest the application of the newer version for that purpose. *Id.* at 1300. The defendant challenged only the enhancement, on *ex post facto* grounds, because the enhancement in effect at the time the crimes were committed was more lenient. *Id.* Thus, the defendant proposed that the Guidelines in effect at sentencing be used to determine his base offense level, but that the Guidelines in effect when he committed his offense be applied to determine the enhancement. *Id.* The Seventh Circuit expressly rejected the defendant's argument and affirmed the district court's application of a single version of the Guidelines. *Id.* at 1301; *see also United States v. Boula,* 997 F.2d 263, 266 (7th Cir.1993) (rejecting the defendants' argument that the Guidelines in effect when mail frauds were committed should be applied to determine the base offense level, but that the Guidelines in effect at sentencing should be applied regarding grounds for enhancement). The *Anderson* court added that application of the Guidelines in effect at sentencing rather than those in effect when the crimes were committed was not an *ex post facto* violation because "there is no *ex post facto* problem when the Guideline Manual in effect at sentencing, taken as a whole, cannot possibly generate a sentence more severe than the most lenient sentence that was available at the time the defendant com-

---

4. Under this scenario, Defendant would not be entitled to the one level reduction for an early

plea because his offense level is not 16 or higher. *See* U.S.S.G. § 3El.l(b).

mitted his offense." 61 F.3d at 1302 (citing *United States v. Nelson,* 36 F.3d 1001, 1004 (10th Cir.1994)) (collecting cases at n. 10).

The present case presents a different scenario than those found in *Anderson* and *Boula.* Defendant is not suggesting that the Court use one version of the Guidelines to determine his base offense level and a different, more favorable version for reductions or enhancements. Defendant proposes that the Guidelines in effect when he committed the offenses in his first three counts be applied in their entirety to sentence those counts because doing so results in a lesser overall sentencing range than if the current Guidelines are applied to all counts. In effect, Defendant argues that the application of section 1B1.11(b)(3), discussed below, to the facts of his case violates the *Ex Post Facto* Clause.

## 2. The Commission's Extension of the One Book Rule to Multiple Counts in Section 1B1.11(b)(3)

The 1993 amendments to the Guidelines extends the one book rule to multiple counts. U.S.S.G.App. C, amend. 474. Section 1B1.11(b)(3) states:

> If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses.

The commentary to this provision, U.S.S.G. § 1B1.11, comment. (backg'd), explains why, in the Sentencing Commission's view, this rule does not violate the *Ex Post Facto* Clause:

> Subsection (b)(3) provides that where the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses, even if the revised edition results in an increased penalty for the first offense. Because the defendant completed the second offense after the amendment to the guidelines took effect, the *ex post facto* clause does not prevent determining the sentence for that count based on the amended guidelines. For example, if a defendant pleads guilty to a single count of embezzlement that occurred after the most recent edition of the Guidelines Manual became effective, the guideline range applicable in sentencing will encompass any relevant conduct (e.g., related embezzlement offenses that may have occurred prior to the effective date of the guideline amendments) for the offense of conviction. The same would be true for a defendant convicted of two counts of embezzlement, one committed before the amendments were enacted, and the second after. In this example, the *ex post facto* clause would not bar application of the amended guideline to the first conviction; a contrary conclusion would mean that such defendant was subject to a lower guideline range than if convicted only of the second offense. Decisions from several appellate courts addressing the analogous situation of the constitutionality of counting pre–guidelines criminal activity as relevant conduct for a guidelines sentence support this approach. *See United States v. Ykema,* 887 F.2d 697 (6th Cir.1989) (upholding inclusion of pre–November 1, 1987, drug quantities as relevant conduct for the count of conviction, noting that habitual offender statutes routinely augment punishment for an offense of conviction based on acts committed before a law is passed), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990); *United States v. Allen,* 886 F.2d 143 (8th Cir.1989) (similar); *see also United States v. Cusack,* 901 F.2d 29 (4th Cir.1990) (similar).

Applying the Commission's reasoning in Policy Statement 1B1.11(b)(3) and accompanying commentary to the present case suggests the following: Defendant's tax offenses were part of the same course of conduct; thus, had he pleaded guilty to only the last two counts for 1993 and 1994, a sentencing range based on the grouping of all losses as relevant conduct under section 1B1.3 would not violate the *Ex Post Facto* Clause. Defendant should not enjoy a lower sentencing range because he also pleaded guilty to three offenses for 1990 through 1992 that were committed before the Guidelines amendment took effect.

### 3. Application of the One Book Rule to Multiple Counts

Four circuits have applied the one book rule to multiple counts in situations similar to the case at bar. The First, Eighth, and Eleventh Circuits have concluded that applying the one book rule to multiple counts occurring pre and post amendment does not violate the *Ex Post Facto* Clause. The Ninth Circuit recently held that the one book rule may violate the Constitution in certain cases similar to the one before the Court.

In *United States v. Cooper*, 35 F.3d 1248, 1249 (8th Cir.1994), *vacated*, 514 U.S. 1094, 115 S.Ct. 1820, 131 L.Ed.2d 742, *reinstated*, 63 F.3d 761 (8th Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 1548, 134 L.Ed.2d 650 (1996), the defendant pleaded guilty to three counts of being a felon in possession of a firearm. Two of the counts were committed prior to the 1991 Guidelines amendment; the last count was committed after the 1991 amendment. *Id.* The district court sentenced all three counts under the amended version, and the defendant challenged his sentence on *ex post facto* grounds. *Id.* In upholding the sentence, the Eighth Circuit reasoned that on the date the defendant committed the last offense, he was on notice that the amended Guidelines increased the offense levels for the crimes in question and required aggregation of firearms under the new grouping rules. *Id.* at 1250–53. In language equally applicable to Defendant Tucker, the court observed that "it was not the amendments to the Sentencing Guidelines that disadvantaged [the defendant], it was his election to continue his criminal activity after the 1991 amendments became effective." *Id.* at 1250.

The *Cooper* court further reasoned that the amended Guidelines should be applied because the two pre–amendment counts were part of the same or continuing course of conduct as the last count, committed post amendment. *Id.* at 1251. The Eighth Circuit has noted that for sentencing purposes the "same course of conduct" is the unilateral equivalent of the continuing group offense of conspiracy. *Id.* The completion date of a continuing offense controls which version of the Guidelines are applied. *Id.* The court concluded that the pattern of offenses committed by the defendant spanning the time the amendment took effect met the Commission's definition of "same course of conduct." *Id.* n. 4. Thus, the court found that application of the Guidelines in effect when the last offense was committed did not violate the *Ex Post Facto* Clause.[5] *Id.* at 1253.

Finally, the *Cooper* court relied on the Commission's commentary addressing *ex post facto* concerns and recognized that applying the pre–amendment Guidelines could lead to the anomalous result that "a particular defendant could be subject to a lower sentence if convicted of multiple offenses spanning a revision of the Sentencing Guidelines, than if convicted of the singular last offense after the revision of the Sentencing Guidelines." *Id.* at 1252. The Court agrees with the Eighth Circuit that Congress did not intend nor does *ex post facto* law compel such a result. *See id.* at 1252 n. 5.

Like the Eighth Circuit, the Eleventh Circuit also relied on the fair warning principle and the analogy to a continuous offense such as conspiracy in concluding that application of the post–amendment Guidelines to multiple counts, some occurring before and some after the amendment, did not violate the *Ex Post Facto* Clause. *United States v. Bailey*, 123 F.3d 1381, 1403–07 (11th Cir.1997) (to be reported at 123 F.3d 1381). The court stated "a defendant knows, when he continues to commit related crimes, that he risks sentencing for all of his offenses under the latest, amended Sentencing Guidelines Manual." *Id.* at 1405.

---

5. Defendant argues that failure to file a tax return is not a continuing offense and application of the current Guidelines to all counts cannot be based on the sentencing of a continuing offense. Def.'s Reply at 1. Sentencing of a continuing offense, such as conspiracy, under the Guidelines in effect on the last date of the continuing offense does not violate the *Ex Post Facto* Clause. *United States v. Buckner*, 9 F.3d 452, 454 (6th Cir.

1993). Defendant is correct that willful failure to file a tax return is not a continuing offense. *United States v. Pollen*, 978 F.2d 78, 86 (3rd Cir.1992) (collecting cases), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993). This does not preclude the Court from finding that Defendant's pattern of tax crimes is part of the same course of conduct.

In *United States v. Regan*, 989 F.2d 44, 45 (1st Cir.1993), the defendant pleaded guilty to 55 counts of bank embezzlement. Some offenses were committed prior to the 1989 amendment that increased the base level enhancement. *Id.* at 48. The district court applied the amendment to all counts, and on review the defendant complained that his sentence violated the *Ex Post Facto* Clause. *Id.* The First Circuit recognized that all the defendant's embezzlements were part of an ongoing scheme and that the pre–amendment offenses would become relevant conduct had he been convicted only on the later counts. *Id.* Finding that the defendant had fair warning at the time he committed his later acts that his prior conduct could be used in determining his sentence for the later counts, the court held that the sentence imposed was constitutional. *Id.*

Defendant relies upon a recent Ninth Circuit decision that in certain cases the policy statement in Guideline section 1B1.11(b)(3) violates the *Ex Post Facto* Clause. *United States v. Ortland,* 109 F.3d 539, 547 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 141, —— L.Ed.2d ——, 1997 WL 356638. *Ortland* is the only circuit court decision specifically addressing Guidelines section 1B1.11(b)(3).

In *Ortland,* the defendant was convicted of five counts of mail fraud. *Id.* at 546. Four of the five counts occurred before an amendment to the Guidelines that increased the punishment for fraud. *Id.* The district court, following section 1B1.11(b)(3), calculated the total loss from all five counts and applied the post-amendment Guidelines to determine the defendant's sentence. *Id.*

In addressing the *ex post facto* challenge to section 1B1.11(b)(3), the Ninth Circuit examined the Commission's reasoning and found it unpersuasive, noting that the Commission "analogized to relevant conduct calculations, not to *ex post facto* cases." *Id.* at 546. The court remanded for resentencing, stating:

> Application of the policy statement in this case would violate the Constitution; its application would cause Ortland's sentence on earlier, completed counts to be increased by a later Guideline. Moreover, the Commission's explanation is not entirely logical. The harm caused by the earlier offenses can be counted [as relevant conduct] in sentencing the later one. That does not mean that the punishment for the earlier offenses themselves can be increased, simply because the punishment for the later one can be. In fact, were the later count to fall at some time after sentencing, all that would remain would be the earlier sentences, which would be too long. There are [in this case] five 'separate crimes; each carries its own punishment, even if the sentences are all to run concurrently to the extent that they overlap. We therefore vacate the sentence and remand so that the district court can sentence Gerald [Ortland] under the 1988 Guidelines on counts one through four and under the 1994 Guidelines on count five.

*Id.* at 547 (internal citation omitted).

This Court finds the reasoning of the First, Eighth, and Eleventh Circuits more persuasive than that of the Ninth Circuit. The Court respectfully declines to follow *Ortland* because it fails to address the resulting anomaly recognized by the Commission and so clearly exhibited by the facts of this case: if the tax losses are divided into two groups as Defendant and the Ninth Circuit suggest, his sentencing range for all counts would be lower than the sentencing range that would be imposed had Defendant only pled and been sentenced to the last two counts. Under the *Ortland* analysis, Defendant would be subject to a sentencing range often to sixteen months for all five counts. Had Defendant only pled and been sentenced to the last two counts, he would be subject to a sentencing range of twelve to eighteen months because the 1990 through 1992 losses would be considered relevant conduct. This Court does not expect that the Seventh Circuit would agree with an analysis that results in less time for more crime.

**4. Application of the One Book Rule to Determine Defendant's Sentencing Range Does Not Violate the *Ex Post Facto* Clause**

Application of the current Guidelines to all five of Defendant's counts does not violate the *Ex Post Facto* Clause. Defendant was put on notice of his sentencing range by the 1993 Guidelines. Before committing his of-

fense for tax year 1993, Defendant had fair warning that under the post 1993 amendment Guidelines the losses from his prior offenses would be either grouped with the most recent offenses or considered as relevant conduct. Defendant could have avoided sentencing under the 1993 amendments by choosing not to commit his last offenses.

Had Defendant pleaded guilty only to the 1993 and 1994 counts, the 1990 through 1992 counts would be considered relevant conduct, and Defendant would be subject to a sentencing range of twelve to eighteen months. Defendant is not disadvantaged by a finding that he is subject to the same sentencing range by pleading guilty to all five counts. Adoption of Defendant's method for calculating his sentence would lead to the anomalous result that he be subject to a lesser sentencing range for pleading guilty to more crimes. The *Ex Post Facto* Clause does not compel this result.

The Court holds that application of the one book rule in sentencing Defendant for multiple counts is constitutional. The tax losses for all counts plus the tax loss from relevant conduct is used to determine Defendant's base offense level under the current version of the Guidelines. The Court adopts the PSI's calculation of Defendant's base offense level of 16 and a total adjusted offense level of 13. Defendant's adjusted combined offense level is also 13. *See* U.S.S.G. § 3D1.4. The Court finds that Defendant's sentencing range is twelve to eighteen months.

In imposing the actual sentence, the Court has chosen to sentence Defendant to the low end of the sentencing range. The Court sentences Defendant to twelve months imprisonment for each count, all terms to be served concurrently.[6]

### 5. The Court Would Impose the Same Sentence Using Defendant's Analysis

Even if the Seventh Circuit were to adopt a two book rule, the twelve month sentence

actually imposed in this case would be within the sentencing range under the prior Guidelines. Under Defendant's proposed method of dividing the tax losses into two groups and applying the earlier version of the Guidelines to the first three counts, Defendant's sentencing range would be ten to sixteen months. If faced with this range, the Court would still impose twelve month concurrent sentences for Defendant's 1990 through 1992 violations.

### IV. DEFENDANT'S SENTENCE DOES NOT VIOLATE THE DOUBLE JEOPARDY CLAUSE

The Double Jeopardy Clause prevents successive punishment and successive prosecution. *Witte v. United States,* 515 U.S. 389, 396, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995). Thus, the Constitution prevents a criminal from being punished twice for the same offense. *Id.* However, the Double Jeopardy Clause is limited in the context of a challenge to sentencing procedures. *United States v. Morgano,* 39 F.3d 1358, 1366 (7th Cir.1994), *cert. denied,* 515 U.S. 1133, 115 S.Ct. 2559, 132 L.Ed.2d 813 (1995). The Constitution provides "no more protection than to prevent a sentencing court from punishing a defendant more than Congress intended." *Id.* (citing *Garrett v. United States,* 471 U.S. 773, 793, 105 S.Ct. 2407, 2418–19, 85 L.Ed.2d 764 (1985)). That is, in the sentencing context, the Double Jeopardy Clause only protects a defendant from receiving a sentence in excess of the statutory maximum penalty. *Morgano,* 39 F.3d at 1368.

The case at bar does not present a double jeopardy violation. The maximum statutory term of imprisonment for willful failure to file a tax return is twelve months. 26 U.S.C. § 7203. Defendant's sentence for each count does not exceed the statutory maximum, nor

---

**6.** When sentencing on multiple counts of conviction, the sentence imposed on each other count shall be the total punishment as determined under U.S.S.G. § 3D. *See* U.S.S.G. 5G1.2(b). The commentary to section 5G1.2 provides: "This section specifies the procedure for determining the specific sentence to be imposed on each count in a multi–count case. The combined length of the sentences ('total punishment') is determined by the adjusted combined offense level. To the extent possible, the total punishment is to be imposed on each count. Sentences on all counts run concurrently, except as required to achieve the total sentence, or as required by law."

does his total punishment because his terms of imprisonment will run concurrently.

## V. A DOWNWARD DEPARTURE BASED ON A FAILURE BY THE COMMISSION TO TAKE DEFENDANT'S CASE INTO ACCOUNT IN FORMULATING THE GUIDELINES IS NOT WARRANTED

■ Defendant alternatively moves for a downward departure based on a failure by the Commission to adequately account for the particular problems presented by Defendant's sentencing. Several comments in the introduction to the Guidelines Manual are relevant to Defendant's request. The Commission specifically addresses the possibility of departures as follows:

> The sentencing statute permits a court to depart from a guideline–specified sentence only when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b).... When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. § 1A4(b).

The Commission provided for the aggregation of multi–count convictions because it recognized the potential problems with a charge offense system, namely that prosecutors may seek to influence sentencing by increasing or decreasing the number of counts. U.S.S.G. § 1A4(a). The Commission noted that "a sentencing court may control any inappropriate manipulation of the indictment through use of its departure power." *Id.* The Commission further addressed the sentencing of multi–count convictions:

> Several individual guidelines provide special instructions for increasing punishment when the conduct that is the subject of that count involves multiple occurrences or has caused several harms. The guidelines also provide general rules for aggravating punishment in light of multiple harms charged separately in separate counts. *These rules may produce occasional*

*anomalies,* but normally they will permit an appropriate degree of aggravation of punishment for multiple offenses that are the subjects of separate counts.

\*　　\*　　\*　　\*　　\*　　\*

> The guidelines have been written in order to minimize the possibility that an arbitrary casting of a single transaction into several counts will produce a longer sentence. In addition, *the sentencing court will have adequate power to prevent such a result through departures.*

U.S.S.G. § 1A4(e) (emphasis supplied).

Thus, the Commission recognized (1) that application of the Guidelines will occasionally result in anomalies; and (2) that the sentencing court's departure power may be utilized to address such cases. The Supreme Court also recognized the district court's power to depart downward where the Sentencing Commission has not adequately taken into account the unusual circumstances of a given case when formulating the Guidelines. *Witte,* 515 U.S. at 405–406, 115 S.Ct. at 2209.

However, because the actual sentence imposed in this case is within the sentencing range as calculated under the prior or the current Guidelines, the Court will not depart downward on the basis of the anomaly discussed above. The Court considered the anomaly in choosing to sentence Defendant to a twelve month sentence on each count. *See id.* at 405, 115 S.Ct. at 2209 ("district courts under the Guidelines retain enough flexibility in appropriate cases to take into account the fact that conduct underlying the offense at issue has previously been taken into account in sentencing for another offense").

## VI. A DOWNWARD DEPARTURE BASED ON DIFFICULT FAMILY CIRCUMSTANCES IS NOT WARRANTED

■ Defendant alternatively moves for a downward departure based on a combination of difficult circumstances existing in his family. Defendant's eighty–three–year–old father suffers from advanced partial paralysis and is confined to a wheelchair. (Pre–sentence Investigation Report at 5.) Defendant's

**1320**

father resides in Defendant's home, and Defendant assists with caring for his father on evenings and weekends. (Pre–sentence Investigation Report at 5.) Defendant's seven-year–old son and twenty–four–year–old stepdaughter also reside with Defendant and his wife. (Pre–sentence Investigation Report at 5.) Defendant's wife states that the stepdaughter suffers from multiple sclerosis and that Defendant's son suffers from a learning disability and anxiety. (Letter to the Court attached to Defendant's motion.)

Defendant attached to his motion letters from his wife, a friend of the family, a psychologist, and several physicians treating family members, to explain to the Court the family's varying difficulties and to express the pressing needs for Defendant's presence. Defendant cares for his elderly father who is partially paralyzed and confined to a wheelchair. Defendant's wife explained that their seven–year–old son greatly needs his father at home. Although the Court is sympathetic to the hardships that Defendant's family will suffer as a result of his incarceration, the Court recognizes that all families suffer when a loved one on which they depend is absent for long periods for whatever reasons, whether work, illness, or incarceration. Defendant's present circumstances do not warrant a downward departure. However, the Court considered these factors in choosing to sentence Defendant to the minimum imprisonment allowed by the Guideline range calculated under the current Guidelines.

## VII. CONCLUSION

For the reasons set forth above, **the Court denies Defendant's Motion to Correct the Pre–sentence Report and Plea Agreement.** The Court finds that Defendant's total adjusted offense level is 13 and adopts the sentencing range of twelve to eighteen months recommended in the Pre–sentence Investigation Report. The Court also denies both of Defendant's motions for downward departures. The Court sentences Defendant to twelve months imprisonment for each count, all terms to be served concurrently. Defendant's fines and conditions will be discussed in open court and set forth in the Judgment and Commitment Order.