BRISCOE, Circuit Judge,
concurring and dissenting:
I respectfully concur in part and dissent in part. I concur in the majority’s resolution of the calculation of loss and Apprendi issues, and dissent from the conclusion that the district court’s application of post-amendment guidelines to pre-amendment conduct violates the ex post facto clause.
Six circuits have either expressly upheld the validity of § lBl.ll(b)(3) against ex post facto challenges or have approved and applied the basic concept underlying that section. In United States v. Cooper, 35 F.3d 1248 (8th Cir.), vacated, 514 U.S. 1094, 115 S.Ct. 1820, 131 L.Ed.2d 742 (1995), reinstated, 63 F.3d 761 (8th Cir. 1995), defendant was convicted of various firearms violations, some occurring prior to 1991 amendments increasing the applicable base offense levels, and some occurring after those amendments.[1] The district court sentenced him under the amended guidelines for all counts of conviction, and the Eighth Circuit affirmed. The court first observed that “ ‘central to the ex post facto prohibition is a concern for the “lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.” ’ ” Id. at 1250 (quoting Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981))). The court then concluded that the requisite notice was provided by the 1991 amendments:
At the time [defendant] elected to commit the third firearms violation he was clearly on notice of the 1991 amendments to the Sentencing Guidelines and the fact that they increased the offense levels for the firearm crimes in question and required the aggregation of firearms in Counts I, II and IV. In our view, [defendant] had fair warning that commission of the January 23,1992, firearm crime was governed by the 1991 amendments that provided for increased offense levels and new grouping rules that considered the aggregate amount of harm.
Id. The court thus concluded that “it was not the amendments to the Sentencing Guidelines that disadvantaged [defendant], it was his election to continue his criminal activity after the 1991 amendments became effective.” Id. Further, the court observed it is well established that the completion date of a conspiracy determines which version of the guidelines applies, and “a common scheme or plan by an individual and the same course of conduct by an individual are the unilateral .equivalents to the continuing group offense of conspiracy.” Id. at 1251 (internal quotation omitted).
The court therefore held that the amended version of the guidelines applied to all counts, including those relating to conduct occurring prior to the amend- *1258 merits. “To hold otherwise could lead to the anomalous result that a particular defendant could be subject to a lower sentence if convicted of multiple offenses spanning a revision of the Sentencing Guidelines, than if convicted of the singular last offense after the revision of the Sentencing Guidelines.” Id. at 1252.
The Eleventh Circuit subsequently-agreed with the Eighth Circuit, following essentially the same reasoning:
[T]he one book rule, together with the Guidelines grouping rules and relevant conduct, provide that related offenses committed in a series will be sentenced together under the Sentencing Guidelines Manual in effect at the end of the series. Thus, a defendant knows, when he continues to commit related crimes, that he risks sentencing for all of his offenses under the latest, amended Sentencing Guidelines Manual. Analogous to a continuous criminal offense, like conspiracy, the one book rule provides notice that otherwise discrete criminal acts will be sentenced together under the Guidelines in effect at the time of the last of those acts.
United States v. Bailey, 123 F.3d 1381, 1404-05 (11th Cir.1997). The court concluded that “[defendant] had fair notice that continuing his crimes in operating his firearms business subjected him to the amended Sentencing Guidelines in effect when he committed the last of the crimes for which he was convicted.” Id. at 1407. Accord, United States v. Lewis, 235 F.3d 215, 218 (4th Cir.2000) (“We conclude that the guidelines provision of which Lewis complains, U.S.S.G. § lBl.ll(b)(3), does not violate the Ex Post Facto Clause.”); United States v. Kimler, 167 F.3d 889, 893 (5th Cir.1999) (“[W]here a sentencing court groups offenses committed before a change in the sentencing guidelines with offenses after the amendment, and then applies the amended guideline in determining a defendant’s appropriate sentence, the Ex Post Facto Clause is not implicated.”); United States v. Vivit, 214 F.3d 908, 919 (7th Cir.) (holding that the guidelines “provide notice to criminals that engaging in ongoing fraudulent behavior involving the same type of harm risks grouping of convictions, which because of the one-book rule, will' all be sentenced according to the Guidelines in effect when the latest conduct occurred”), cert. denied, — U.S. ——, 121 S.Ct. 388, 148 L.Ed.2d 299 (2000); United States v. Regan, 989 F.2d 44, 48 (1st Cir.1993) (in a pre § lBl.ll(b)(3) case, holding that defendant convicted of 55 counts of embezzlement, some occurring before and some after a guideline amendment increasing base offense levels, was properly sentenced on all counts under the amended guideline).
In a district court case involving virtually the identical tax violation as this case (willful failure to file tax returns for the years 1990 through 1994) and the identical ex post facto argument arising from sentencing the defendant under the post 1993 guideline amendments, the court found no ex post facto problem. United States v. Tucker, 982 F.Supp. 1309 (N.D.Ill.1997). After examining the various circuit court decisions written to date, the Tucker court concluded:
The Court finds the reasoning of the First, Eighth, and Eleventh Circuits more persuasive than that of the Ninth Circuit. The Court respectfully declines to follow Ortland because it fails to address the resulting anomaly recognized by the Commission and so clearly exhibited by the facts of this case: if the tax losses are divided into two groups as Defendant and the Ninth Circuit suggest, his sentencing range for all counts would be lower than the sentencing range that would be imposed had Defendant only pled and been sentenced to the last two counts. Under the OHland analysis, Defendant would be subject to a sentencing range of ten to sixteen months for all five counts. Had Defendant only pled and been sentenced to the last two counts, he would be subject to a sentencing range of twelve to eighteen months because the 1990 through 1992 losses would be considered relevant conduct. This Court does not expect that the Seventh Circuit would agree *1259 with an analysis that results in less time for more crime.
Id. at 1317.[2]
I would follow the reasoning of the Eighth, Eleventh, Fourth, Fifth, Seventh and First Circuits and conclude that the application of guidelines policy statement § lBl.ll(b)(3) to all of Sullivan’s willful failure to file tax counts does not violate the ex post facto clause. As indicated above, the central concern of the ex post facto clause is fair notice to a defendant that the punishment for a crime has been increased from what it was when the crime was committed. Sullivan was on notice even when he committed his first two tax offenses that the guidelines would determine his base offense level from the total tax loss occurring from all years in which he failed to pay taxes. Moreover, the grouping rules and the relevant conduct provisions gave him notice that his three consecutive failures to file would be considered part of the same course of conduct and would collectively determine his sentence.[3] As the Seventh Circuit observed, “[t]he grouping rules, enacted in 1987, provide warning to criminals that completing another criminal offense similar to one committed previously places them in peril of sentencing under a revised version of the Guidelines.” Vivit, 214 F.3d at 919. When Sullivan committed his last failure to file, post-amendment, he was on notice that losses from his first two failures to file would either be grouped with his latest offense or be considered as relevant conduct, and that the penalty for his grouped tax offenses had been increased.
I further agree with the Eighth and Eleventh Circuits that, while failure to file a tax return is not a continuing offense even if committed in successive years, a series of such failures to file is the “same course of conduct” under the guidelines. The “same course of conduct” is analogous to a continuing offense like conspiracy, the ending date of which determines the applicable sentencing guidelines. Finally, like those courts, I am also persuaded by the Commission’s recognition of the anomaly that results if the pre-amendment guidelines were applied to all of Sullivan’s counts of conviction: he “could be subject to a lower sentence if convicted of multiple offenses spanning a revision of the Sentencing Guidelines, than if convicted of the singular last offense after the revision of the Sentencing Guidelines.” Cooper, 35 F.3d at 1252. I therefore would conclude that the application of § 1B1.11(b)(3) to sentence Sullivan for all counts under the amended guidelines did not violate the ex post facto clause. I would affirm the district court’s ruling in all regards.

. The effective date of § IB 1.11(b)(3) was November 1, 1993, after the defendant in Cooper was sentenced but before the Eighth Circuit issued its opinion on appeal. Thus, Cooper is one of the cases which did not expressly apply § IB 1.11(b)(3), but it sentenced defendant in a manner completely consistent with that section.

. The district court correctly predicted that the Seventh Circuit would not follow the Ort-land analysis. See Vivit, 214 F.3d at 919.

. In the commentary to the relevant conduct ' provisions of the guidelines, the Commission's discussion of “same course of conduct" includes the following example: "a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals.” U.S.S.G. § 1B1.3, comment. (n.9(B)).