**F I L E D**
United States Court of Appeals
Tenth Circuit

JUN 23 1998

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TRACI POE BOYD, KEVIN KWAN
CHAN, TRACY COY "PODIE" POE,
and JAMES B. POE,

     Defendants-Appellants.

Nos. 97-6237, 97-6238,
97-6240, 97-6245

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CR-97-156-R)**

---

Fred L. Staggs, Oklahoma City, Oklahoma, for Defendant-Appellant Traci Poe Boyd.

Todd Markum, Oklahoma City, Oklahoma, for Defendant-Appellant Kevin Kwan Chan.

Robert A. Jackson (Oscar B. Goodman, Goodman, Chesnoff and Keach, Las Vegas, Nevada, with him on the brief), Jackson, Hall and Associates, Oklahoma City, Oklahoma, for Defendant-Appellant Tracy Coy "Podie" Poe.

Richard E. Stout, Teague, Stout & Stout, Edmond, Oklahoma, for Defendant-Appellant James B. Poe.

Mary M. Smith, (Patrick M. Ryan, United States Attorney; and Randal A. Sengel, Assistant U.S. Attorney, with her on the briefs), Assistant U.S. Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Before **PORFILIO**, **KELLY**, and **BRISCOE**, Circuit Judges.

**PORFILIO**, Circuit Judge.

A jury convicted Traci Poe Boyd, Kevin Kwan Chan, Tracy Coy "Podie" Poe, and James B. Poe of operating an illegal gambling business in violation of 18 U.S.C. § 1955. All four defendants appeal, arguing the evidence presented at trial was legally insufficient to support their convictions under § 1955. Podie Poe argues § 1955 is unconstitutional under *United States v. Lopez*, 514 U.S. 549 (1995). Finally, Kevin Kwan Chan and James Poe argue the trial court failed to properly instruct the jury on the requirements of § 1955**.**

The jury also convicted Podie Poe of conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Podie Poe appeals this conviction on the following grounds: (1) the government failed to prove the requisite intent, i.e., he and his alleged conspirator knew the proceeds placed into a trust account were from an illegal gambling operation; and (2) his conviction violates the Ex Post Facto Clause of the Constitution because the conspiratorial agreement alleged by the government was formed before Congress enacted § 1956.

Having consolidated these appeals only for purposes of this disposition, we affirm.

**Sufficiency of the Evidence under § 1955**

Defendants base the appeal of their gambling convictions on an interpretation of 18 U.S.C. § 1955. The statute provides in relevant part:

> **Prohibition of illegal gambling businesses**
> (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
> (b) As used in this section--
> > (1) "illegal gambling business" means a gambling business which--
> > > (i) is a violation of the law of a State or political subdivision in which it is conducted;
> > > (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
> > > (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

18 U.S.C. § 1955. The defendants urge us to read §§ 1955(b)(1)(ii) and (b)(1)(iii) jointly to require the government to show that the five or more persons were involved in the gambling operation for a continuous period of more than thirty days. According to the defendants, the government has failed to meet its burden under this interpretation.[1]

This argument is without merit. The interpretation offered by the defendants has been roundly rejected by our case law. *See **United States v. O'Brien**, 131 F.3d 1428, 1431

---

[1]Defendants have not challenged the government's showing on the other requisites of § 1955. We therefore assume for purposes of this opinion that the evidence presented at trial was sufficient to demonstrate the gambling operation violated state law and remained in continuous operation for more than 30 days.

(10th Cir. 1997) ("Appellants recognize that we have interpreted the 5-person and 30-day requirements of § 1955(b)(1)(ii)-(iii) as disjunctive, *see United States v. Grey*, 56 F.3d 1219, 1222 (10th Cir.1995), but nonetheless urge us to a different result. However, even were we inclined to undo our prior interpretation of the size and duration requirements of § 1955, which we are not, we could not do so absent en banc reconsideration or a superseding contrary decision by the Supreme Court."); *Grey*, 56 F.3d at 1222 ("The 'five or more persons' requirement is separate from the thirty day requirement and, consequently, the government [does] not have to show that five or more persons at all times continued the operation for a period in excess of thirty days."); *United States v. Smaldone*, 485 F.2d 1333, 1351 (10th Cir. 1973) ("It [is] not essential, contrary to appellants' assertions, to establish that each conductor was involved in the gambling business for more than thirty days . . . . The[] requirement[] refer[s] to the gambling operation and not individuals."). The government is not required to demonstrate the involvement of five or more persons for a continuous period of more than thirty days to support a conviction under § 1955, but rather need only demonstrate that the operation operated for a continuous period of thirty days and involved five or more persons at some relevant time. Evidence presented at trial showed that seven individuals were involved in the gambling operation during the charged period. Sufficient evidence exists in the record, therefore, for a reasonable juror to conclude beyond a reasonable doubt the defendants violated § 1955. *United States v. Pinelli*, 890 F.2d 1461, 1465 (10th Cir. 1989) (conviction is supported "if there is record

- 4 -

evidence which would allow a rational trier-of-fact to find the appellants guilty of the crimes charged in the indictment.").

## § 1955 Jury Instructions

In his brief, defendant Chan contends the district court erred by failing to give the jury "a specific instruction requiring the jury to identify the five or more persons operating, managing or conducting the gambling operation." Mr. Chan contends the proffered instruction was necessary to ensure the jury understood the government was required to show the involvement of five or more persons for a continuous period of thirty days. This argument, however, must fail because, as we have seen, it is premised on an erroneous interpretation of § 1955.

A jury instruction is proper if, taken as whole, it does not mislead the jury. *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993). With respect to § 1955(b)(1)(ii), the district court instructed the jury as follows:

> There is no requirement that five or more participants simultaneously be physically present or actually working, nor need it be shown that each individual participant was involved for more than 30 days.
> The government must prove, however, that five or more people conducted, financed, managed, supervised, directed or owned the gambling operation described in the indictment.

These instructions correctly state the law of this circuit. As a result, the jury could not have been misled, and we find no error.

## Constitutionality of § 1955

Podie Poe contends Congress exceeded its authority under the Commerce Clause when it enacted § 1955. We have examined the constitutionality of § 1955 before in *Smaldone*:

> The legislative history of the Act is replete with other examples furnished Congress concerning the detrimental impact that illegal gambling has on interstate commerce. We therefore conclude that Congress acted well within the bounds of the Commerce Clause . . . when enacting section 1955.

*Smaldone*, 485 F.2d at 1343 (citations omitted). Podie Poe contends this conclusion no longer obtains in light of the Supreme Court's opinion in *United States v. Lopez*, 514 U.S. 549 (1995). We review this argument de novo. *United States v. Wilks*, 58 F.3d 1518, 1519 (10th Cir. 1995).

We do not believe *Lopez* requires us to change our opinion of § 1955's constitutionality. In *Lopez*, the Supreme Court struck down 18 U.S.C. § 922(q)(1)(A), a statute which forbade "'any individual knowingly to possess a firearm at a place [he] knows . . . is a school zone,'" as an unconstitutional exercise of Congress' authority under the Commerce Clause. *Lopez*, 514 U.S. at 551 (quoting 18 U.S.C. § 922(q)(1)(A)). Congress' authority under the Commerce Clause, the Court stated, extends to only three types of activity:

> [1] the use of the channels of interstate commerce, . . . [2] the instrumentalities of interstate commerce, or persons or things in interstate commerce, [and 3] those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.

- 6 -

*Lopez*, 514 U.S. at 558-59.  Because § 922 did not involve channels or instrumentalities of interstate commerce, the Court reasoned, the statute would be constitutional only if it regulated an activity which substantially affected interstate commerce.  *Id.* at 559. The Court concluded § 922, as written, provided no grounds to believe this was true.

First, because § 922 did not regulate a *commercial* activity, the statute could not be upheld as one that regulates "activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce."  *Id.* at 561.  Furthermore, § 922 contained no "jurisdictional element which would ensure, through case-by-case inquiry, that the [activity] in question affects interstate commerce." *Id.*  Nor was the statute supported by specific "congressional findings [that] would enable [the court] to evaluate the legislative judgment that the activity in question substantially affected interstate commerce, even though no such substantial effect was visible to the naked eye . . . ."  *Id.* at 563.  Under these circumstances, the Court concluded, no foundation for the exercise of congressional commerce power appeared and the statute was invalid.

Section 1955 does not present the problems which crippled § 922 in *Lopez*.  Section 1955 regulates a strictly commercial activity — gambling — which, if conducted by many individuals and considered in the aggregate, has the potential for substantially affecting interstate commerce.  Furthermore, unlike § 922, § 1955 comes to us supported by specific congressional findings:

> The Congress finds that (1) illegal gambling involves widespread use of, and has an effect upon, interstate commerce and the facilities thereof; (2) illegal gambling is dependent upon facilities of interstate commerce for such purposes as obtaining odds, making and accepting bets, and laying off bets; (3) money derived from or used in illegal gambling moves in interstate commerce or is handled through the facilities thereof; (4) paraphernalia for use in illegal gambling moves in interstate commerce; and (5) illegal gambling enterprises are facilitated by the corruption and bribery of State and local officials or employees responsible for the execution of or enforcement of criminal laws.

*United States v. Wall*, 92 F.3d 1444, 1467 (6th Cir.1996) (Boggs, J., dissenting) (quoting S. Rep. No. 617, 91st Cong., 1st Sess. 16 (1969)). Finally, § 1955 itself provides a logical stopping point, delineating conduct to be regulated by Congress and conduct to be left to the regulation of the state. Section 1955 only criminalizes illegal gambling which operates for a period of more than thirty days and has involved five or more persons. Regulation of illegal gambling involving less than five persons or operating for thirty days or less is left to the states. *Cf. Lopez*, 514 U.S. at 564 ("Under the theories that the Government presents in support of § 922(q), it is difficult to perceive any limitation on federal power, even in areas . . . where States historically have been sovereign. Thus, if we were to accept the Government's arguments, we are hard-pressed to posit any activity by an individual that Congress is without power to regulate."). Because the circumstances which caused the *Lopez* Court to question § 922's constitutionality are not present here, *Lopez* does not move us to alter our opinion "that Congress acted well within the bounds of the Commerce Clause . . . when enacting section 1955." *Smaldone*, 485 F.3d at 1343; *see also United*

*States v. Zizzo*, 120 F.3d 1338, 1350-51 (7th Cir. 1997) (upholding § 1955 after

considering it in light of *Lopez*); *Wall*, 92 F.3d at 1449-52 (6th Cir.1996) (same).

### Sufficiency of the Evidence for the § 1956(h) Conviction

Paul Porter, a CPA, testified at trial that Podie Poe hired him to set up a trust account

for the dual purposes of setting Mr. Poe's financial house in order and enabling Mr. Poe to

keep accurate records of his income for tax purposes. Mr. Porter agreed to open a trust

account in his own name and handled Mr. Poe's finances from that point on, even to the

day Mr. Porter testified at trial. As part of his duties, Mr. Porter deposited proceeds of the

gambling operation in the trust account, maintained records of Mr. Poe's gambling income,

prepared Mr. Poe's income tax returns, and paid monthly bills related to the gambling

operation. Mr. Porter testified he knew that the money flowing into the trust account was

gambling proceeds and that "Mr. Poe is well-known as a gambler." Mr. Porter agreed to

testify for the prosecution in Mr. Poe's trial under a grant of immunity and was the

government's sole witness on the money laundering charge.

Podie Poe contends the government failed to prove he conspired with Mr. Porter to

launder money in violation of §§ 1956(h)[2] and (a)(1)(A)(i).[3] Section 1956(a)(1)(A)(i)

---

[2]18 U.S.C. § 1956(h) provides:
Any person who conspires to commit any offense defined in this section or
section 1957 shall be subject to the same penalties as those prescribed for
the offense the commission of which was the object of the conspiracy.

[3]18 U.S.C. § 1956(a)(1)(A)(i) provides,
Whoever, knowing that the property involved in a financial transaction

(continued...)

prohibits money laundering only when the defendant knows "the property involved in a financial transaction represents the proceeds of some form of unlawful activity." Mr. Poe maintains the government presented "absolutely no evidence" to prove Mr. Porter and he knew the gambling proceeds were derived from "unlawful activity." In support of this claim, Mr. Poe cites both his and Mr. Porter's testimony that Mr. Poe's attorney had assured them the gambling operation did not violate federal gambling laws. Because both Mr. Porter and Mr. Poe believed the gambling operation conformed to federal law, Mr. Poe argues, they cannot have agreed to use the proceeds of an activity they knew to be unlawful in a financial transaction.[4]

This argument overlooks Mr. Poe's patent violation of Oklahoma law. Neither § 1956 nor the indictment in this case specifies the "unlawful activity" which is required to support a conviction under § 1956. The proceeds of *any* illegal activity will do. In its closing argument to the jury, the government maintained the money in the Paul Porter trust

---

[3](...continued)
represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

[4]Because Mr. Poe does not challenge the sufficiency of the evidence on the other requisites of the § 1956 charge, we limit our review of the conviction to Mr. Porter's and Mr. Poe's knowledge regarding the legality of the gambling operation.

account was the proceeds of a gambling operation which violated Okla. Stat. tit. 21, § 982.[5]

Mr. Porter's and Mr. Poe's beliefs regarding the legality of the gambling operation under *federal* law, therefore, are irrelevant to the sufficiency of the government's evidence in the § 1956 charge.

Sufficient evidence exits in the record to demonstrate Mr. Poe's gambling operation violated Okla. Stat. tit. 21, § 982. The only question before us is whether the government presented evidence which would demonstrate Mr. Poe's and Mr. Porter's knowledge that the operation was unlawful. Mr. Poe's knowledge of the illegality of the gambling operation is readily inferred from the manner in which he conducted the business. Access to the gambling operation was strictly controlled and limited to those known to the

---

[5]Okla. Stat. tit. 21, § 982, reads in its entirety:

**§ 982. Commercial gambling**
A. Commercial gambling is:
   1. Operating or receiving all or part of the earnings of a gambling place;
   2. Receiving, recording or forwarding bets or offers to bet or, with intent to receive, record or forward bets or offers to bet, possessing facilities to do so;
   3. For gain, becoming a custodian of anything of value bet or offered to be bet;
   4. Conducting a lottery or with intent to conduct a lottery possessing facilities to do so;
   5. Setting up for use or collecting the proceeds of any gambling device;  or
   6. Alone or with others, owning, controlling, managing or financing a gambling business.
B. Any person found guilty of commercial gambling shall be punished by imprisonment for not more than ten (10) years or a fine of not more than Twenty-five Thousand Dollars ($25,000.00), or by both such fine and imprisonment.

defendants or their confidants. Testimony at trial demonstrated the undercover police officers were only able to enter the premises via introduction by an informant. The premises were guarded by a chain link fence, a barred door, and surveillance cameras. A jury, from these facts, could readily infer Mr. Poe knew his operation violated the law.

Mr. Porter testified he knew the money he handled in the trust account was gambling proceeds. During cross-examination of Mr. Porter by Mr. Poe's defense counsel, the following exchange occurred:

> Q: [Mr. Poe's attorney] opined that as long as there weren't more than five people, Mr. Poe wasn't violating any kind of gambling law, correct?
>
> A: Federal gaming, yes.
>              . . . .
> Q: And you took him at his word, correct?
>
> A: Yes, sir.

Mr. Poe cites this exchange as proof Mr. Porter believed the gambling operation was legal. We believe it proves the contrary. At no point in his testimony does Mr. Porter testify to his beliefs regarding the legality of the gambling operation under *state* law. A reasonable jury could infer from Mr. Porter's care to distinguish between violations of federal and state gaming law that Mr. Porter believed the gambling operation may have violated state law. We therefore conclude "taking the evidence — 'both direct and circumstantial, together with the reasonable inferences to be drawn therefrom' — in the light most favorable to the government, a reasonable jury could find . . . beyond a reasonable doubt," ***United States v.***

*Voss*, 82 F.3d 1521, 1525 (10th Cir. 1996) (citations omitted), that Podie Poe and Paul Porter knew the money which passed through the Paul Porter trust account was the proceeds of an illegal gambling operation.

### § 1956(h) and the Ex Post Facto Clause

Podie Poe was tried and convicted under 18 U.S.C. § 1956, which was originally enacted in 1986. Pub. L. No. 99-570, Title XIII, § 1352(a), Oct. 27, 1986, 100 Stat. 3207-18. The parties agree that Podie Poe and Mr. Porter first agreed to create the trust account in 1986, *before* the law was enacted. Podie Poe contends, because an essential element of the conspiracy charge (namely the agreement) occurred *before* the charged conduct was criminalized, application of the law to him would violate the Ex Post Facto clause of the Constitution. Art. 1 § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."). However, when a crime involves a continuing violation, application of a law enacted after the crime begins does not implicate the ex post facto clause. *See, e.g., **United States v. Massey***, 48 F.3d 1560, 1568 n.7 (10th Cir. 1995) ("Since conspiracy is a continuing offense, a conspirator may be sentenced under a law that is passed during the course of the conspiracy and that increases the penalty--as was the situation in the instant case."); ***United States v. Stanberry***, 963 F.2d 1323, 1327 (10th Cir. 1992) ("When a conspiracy begins during a period where the application of certain Guidelines would be controlling and extends into a period when another Guideline application would be appropriate, there is no violation of the ex post facto clause in applying the Guidelines in

effect at the time of the last act of the conspiracy. The crime of conspiracy is a continuing crime and is not complete until withdrawal or termination. Had Mr. Stanberry wished to avoid the harsher sentencing provisions, he could have withdrawn from the conspiracy prior to the effective date of the later Guideline provisions." (citations omitted)). Because Poe's conviction involved a continuing offense, it does not offend the Ex Post Facto clause.

**AFFIRMED**.