**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

JOHNNIE C. SULLIVAN,

       Defendant - Appellant.

No. 00-8012

(D. Wyoming)

(D.C. NO. 99-CR-39-J)

---

**ORDER**

Filed July 11, 2001

---

Before **KELLY**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

---

This matter is before the panel on appellee's petition for rehearing with suggestion for rehearing en banc. The panel grants the petition for rehearing, withdraws the previous opinion and vacates our judgment entered in this case on March 20, 2001. An amended opinion is issued simultaneously herewith.

The petition for rehearing en banc is dismissed, as moot.

            ENTERED FOR THE COURT:
            Patrick Fisher, Clerk of Court

            By:
                Keith Nelson
                Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 11 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHNNIE C. SULLIVAN,

Defendant - Appellant.

No. 00-8012

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 99-CR-39-J)**

---

Jill M. Wichlens, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender with her on the briefs), Denver, Colorado, appearing for appellant.

Meghan S. Skelton (Alan Hechtkopf with her on the briefs), Tax Division, Department of Justice, Washington, D.C., appearing for appellee.

---

Before **KELLY** , **ANDERSON** , and **BRISCOE** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

Johnnie Sullivan was convicted following a jury trial on three counts of willful failure to file a tax return, in violation of 26 U.S.C. § 7203. He was sentenced on all three counts pursuant to the Sentencing Guidelines in effect at the time of sentencing, although the applicable tax offense guidelines had been amended after Mr. Sullivan had committed two of the three counts of willful failure to file. He argues on appeal that the application of the post-amendment guidelines to all three counts violates the *ex post facto* clause because it resulted in a higher guideline range than would the application of the pre-amendment guidelines to all three counts or the pre-amendment guidelines to the pre-amendment counts and the post-amendment guidelines to the post-amendment count. Mr. Sullivan also argues the district court erred in using a 20%-of-gross-income figure to calculate the tax loss in this case. Finally, he argues in supplemental briefing filed just prior to oral argument of this case that the Supreme Court's recent decision in Apprendi v. New Jersey, 120 S. Ct. 2348 (2000) invalidates his sentence because certain sentencing factors were not submitted to the jury. We affirm.

## BACKGROUND

Mr. Sullivan was the owner and operator of Sullivan's Rat Hole Drilling, a sole proprietorship that drilled holes for oil excavation. Mr. Sullivan stipulated

-2-

that Sullivan's Rat Hole Drilling earned gross receipts of $606,000 in 1991, $564,765 in 1992, and $517,253 in 1993. He failed to file tax returns for the years 1991, 1992 and 1993. The jury convicted him on all three counts of willful failure to file.

The district court used the November 1, 1998, edition of the sentencing guidelines to calculate Mr. Sullivan's sentence. Pursuant to U.S.S.G. §3D1.2(d), the three counts were grouped and the initial base offense level was calculated by reference to the total aggregate amount of loss. [1] The court determined that Mr. Sullivan's total gross income for the three year period was $1,688,017 and that, pursuant to U.S.S.G. §§2T1.1(a)(2) and 2T1.1(c)(2), the tax loss was 20% of that figure, or $337,603. This gave Mr. Sullivan a base offense level of 17. After a two-level enhancement for sophisticated concealment, pursuant to §2T1.1(b)(2), Mr. Sullivan's total offense level was 19. This resulted in a sentencing range of 30-37 months. The court sentenced him at the low end of the range—30 months—amounting to 10 months on each count of conviction, to run

---

[1]Section 3D1.1(a) provides for the grouping of "Closely Related Counts" as specified in §3D1.2. Section 3D1.2, in turn, provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Among such counts "involving substantially the same harm" are counts where the "offense level is determined largely on the basis of the total amount of harm or loss." Offenses encompassed by §2T1.1, willful failure to file tax returns, are specifically included as counts which must be grouped.

consecutively. Mr. Sullivan did not object at the time of sentencing to the court's use of the 1998 sentencing guidelines.

## DISCUSSION

Mr. Sullivan concedes that, because his trial counsel did not object to the application of the November 1, 1998, guidelines to his sentence, we review his sentence under the guidelines only for plain error. See United States v. Gilkey, 118 F.3d 702, 704 (10th Cir. 1997); Fed. R. Crim. P. 52(b). The plain error standard applies when an *ex post facto* claim is not raised at sentencing. See United States v. Massey, 48 F.3d 1560, 1568 (10th Cir. 1995). "To constitute plain error, the error must have been both 'obvious and substantial. . . . An error is substantial if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Gerber, 24 F.3d 93, 95 (10th Cir. 1994) (quoting United States v. Brown, 996 F.2d 1049, 1053 (10th Cir. 1993)). "We review de novo questions of law regarding application of the sentencing guidelines, and review for clear error the district court's factual findings." United States v. Spencer, 178 F.3d 1365, 1367 (10th Cir. 1999).

**I. Ex Post Facto Argument**

The sentencing guidelines applicable to tax offenses were amended effective November 1, 1993. The amendment increased the base offense level for failure to file convictions. Mr. Sullivan was convicted of failing to file tax returns on April 15, 1992, April 15, 1993, and April 15, 1994. Thus, two of the counts related to conduct occurring before the guidelines amendment and one count related to conduct occurring after the amendment. His total offense level under the pre-amendment guidelines was 15. Under the post-amendment guidelines, it was 19.

The Sentencing Guidelines contain the "one-book rule": "The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual." U.S.S.G. §1B1.11(b)(2), p.s. We, like virtually every other circuit, have approved use of the one-book rule. See United States v. Nelson, 36 F.3d 1001, 1004 (10th Cir. 1994). The Guidelines also state that, in general, a sentencing court must apply the guidelines in effect at the time of sentencing, see U.S.S.G. §1B1.11(a), p.s., unless such application would violate the *ex post facto* clause. See U.S.S.G. §1B1.11(b)(1), p.s.; see also United States v. Svacina, 137 F.3d 1179, 1186 (10th Cir. 1998). "The Ex Post Facto Clause is violated if the

court applies a guideline to an event occurring before its enactment, and the application of that guideline disadvantages the defendant 'by altering the definition of criminal conduct or increasing the punishment for the crime.'" Id. (quoting Lynce v. Mathis, 519 U.S. 433, 441 (1997)).

Additionally, in 1993, the Sentencing Commission issued a policy statement making explicit that the one-book rule applies to situations involving multiple counts: "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. §1B1.11(b)(3), p.s. The commentary to that provision states that the revised edition is to be applied "even if the revised edition results in an increased penalty for the first offense." U.S.S.G. §1B1.11(b)(3), comment. (backg'd.). [2] That commentary also explains why the Commission perceives no *ex post facto* problem with §1B1.11(b)(3):

> Because the defendant completed the second offense after the amendment to the guidelines took effect, the ex post facto clause does not prevent determining the sentence for that count based on the amended guidelines. For example, if a defendant pleads guilty to a single count of embezzlement that occurred after the most recent edition of the Guidelines Manual became effective, the guideline

---

[2]"[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

range applicable in sentencing will encompass any relevant conduct (e.g., related embezzlement offenses that may have occurred prior to the effective date of the guideline amendments) for the offense of conviction. The same would be true for a defendant convicted of two counts of embezzlement, one committed before the amendments were enacted, and the second after. In this example, the ex post facto clause would not bar application of the amended guideline to the first conviction; a contrary conclusion would mean that such defendant was subject to a lower guideline range than if convicted only of the second offense.

Id. Mr. Sullivan argues that the application of the November 1, 1998, guidelines to all three counts, consistent with §1B1.11(b)(3), violates the ex post facto clause. Both parties agree that application of the amended guidelines to Mr. Sullivan's pre-amendment conduct (the first two counts of conviction), or to all three counts, disadvantaged Mr. Sullivan by subjecting him to a higher sentencing range.

As both parties acknowledge, circuit courts are divided on the question of whether sentences consistent with §1B1.11(b)(3) violate the ex post facto clause. In our first opinion in this case, we held that Mr. Sullivan's sentence pursuant to §1B1.11(b)(3) did violate the ex post facto clause, because we viewed the punishment for Mr. Sullivan's first two tax violations as having been retroactively increased by a guideline enacted after he committed those violations. By contrast, the government argues that Mr. Sullivan's sentence is more like a sentence enhancement which utilizes prior convictions to increase punishment for a crime, or more like a sentence for a continuing offense which spans a guideline

amendment.  There is no dispute that these latter situations involve no *ex post facto* problem.  The question in this case is whether Mr. Sullivan's case is more like the simple retroactive increase in punishment for a crime, or more like a sentencing enhancement or sentence for a continuing offense spanning an amendment.  After careful consideration, we conclude that Mr. Sullivan's sentence is more like the latter situations and does not violate the *ex post facto* clause.

In so holding, we are in agreement with six other circuits, which have either expressly upheld the validity of §1B1.11(b)(3) against *ex post facto* challenges or have approved and applied the basic concept underlying that section.  In United States v. Cooper, 35 F.3d 1248 (8th Cir.), vacated, 514 U.S. 1094 (1994), reinstated, 63 F.3d 761 (8th Cir. 1995), cert. denied, 517 U.S. 1158 (1996), the defendant was convicted of various firearms violations, some occurring prior to 1991 amendments increasing the applicable base offense levels, and some occurring after those amendments.[3]  The district court sentenced him under the amended guidelines for all counts of conviction, and the Eighth Circuit affirmed.  The court first observed that "'central to the ex post facto prohibition is

---

[3]The effective date of §1B1.11(b)(3) was November 1, 1993, after the defendant in Cooper was sentenced but before the Eighth Circuit issued its opinion on appeal.  Thus, Cooper is one of the cases which did not expressly apply §1B1.11(b)(3), but it sentenced the defendant in a manner completely consistent with that section.

a concern for the "lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated."'" Id. at 1250 (quoting Miller v. Florida, 482 U.S. 423, 430 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 30 (1981))). The court then concluded that the requisite notice was provided by the 1991 amendments:

> At the time [defendant] elected to commit the third firearms violation he was clearly on notice of the 1991 amendments to the Sentencing Guidelines and the fact that they increased the offense levels for the firearm crimes in question and required the aggregation of firearms in counts I, II, and IV. In our view, [defendant] had fair warning that commission of the January 23, 1992 firearm crime was governed by the 1991 amendments that provided for increased offense levels and new grouping rules that considered the aggregate amount of harm.

Id. The court thus concluded that "it was not the amendments to the Sentencing Guidelines that disadvantaged [defendant], it was his election to continue his criminal activity after the 1991 amendments became effective." Id. Further, the court observed that it is well established that the completion date of a conspiracy determines which version of the guidelines applies, and "a '"common scheme or plan" by an individual and the "same course of conduct" by an individual are the unilateral equivalents to the continuing group offense of conspiracy.'" Id. at 1251 (quoting United States v. Reetz, 18 F.3d 595, 598 (8th Cir. 1994)).

The court therefore held that the amended version of the guidelines applied to all counts, including those relating to conduct occurring prior to the amendments. "To hold otherwise could lead to the anomalous result that a

particular defendant could be subject to a lower sentence if convicted of multiple offenses spanning a revision of the Sentencing Guidelines, than if convicted of the singular last offense after the revision of the Sentencing Guidelines." Id. at 1252.

The Eleventh Circuit subsequently agreed with the Eighth Circuit, following essentially the same reasoning:

> [T]he one book rule, together with the Guidelines grouping rules and relevant conduct, provide that related offenses committed in a series will be sentenced together under the Sentencing Guidelines Manual in effect at the end of the series. Thus, a defendant knows, when he continues to commit related crimes, that he risks sentencing for all of his offenses under the latest, amended Sentencing Guidelines Manual. Analogous to a continuous criminal offense, like conspiracy, the one book rule provides notice that otherwise discrete criminal acts will be sentenced together under the Guidelines in effect at the time of the last of those acts.

United States v. Bailey, 123 F.3d 1381, 1404-05 (11th Cir. 1997). The court concluded that "[defendant] had fair notice that continuing his crimes in operating his firearms business subjected him to the amended Sentencing Guidelines in effect when he committed the last of the crimes for which he was convicted." Id. at 1407. Accord, United States v. Lewis, 235 F.3d 215, 218 (4th Cir. 2000) ("We conclude that the guidelines provision of which Lewis complains, U.S.S.G. §1B1.11(b)(3), does not violate the Ex Post Facto Clause."), petition for cert. filed, 69 U.S.L.W. 3702 (Apr. 17, 2001) (No. 00-1605); United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("[W]here a sentencing court groups offenses

committed before a change in the sentencing guidelines with offenses after the amendment, and then applies the amended guideline in determining a defendant's appropriate sentence, the Ex Post Facto Clause is not implicated."); United States v. Vivit, 214 F.3d 908, 919 (7th Cir.) (holding that the guidelines "provide notice to criminals that engaging in ongoing fraudulent behavior involving the same type of harm risks grouping of convictions, which because of the one-book rule, will all be sentenced according to the Guidelines in effect when the latest conduct occurred."), cert. denied, 121 S. Ct. 388 (2000); United States v. Regan, 989 F.2d 44, 48 (1st Cir. 1993) (in a pre-§1B1.11(b)(3) case, holding that defendant convicted of 55 counts of embezzlement, some occurring before and some after a guideline amendment increasing base offense levels, was properly sentenced on all counts under the amended guideline).

In a district court case involving virtually the identical tax violation as this case (willful failure to file tax returns for the years 1990 through 1994) and the identical *ex post facto* argument arising from sentencing the defendant under the post-1993 guideline amendments, the court found no *ex post facto* problem. United States v. Tucker, 982 F. Supp. 1309 (N.D. Ill. 1997). After examining the various circuit court decisions written to date, the Tucker court concluded:

> The Court finds the reasoning of the First, Eighth, and Eleventh
> Circuits more persuasive than that of the Ninth Circuit. The Court
> respectfully declines to follow Ortland because it fails to address the
> resulting anomaly recognized by the Commission and so clearly

-11-

exhibited by the facts of this case: if the tax losses are divided into two groups as Defendant and the Ninth Circuit suggest, his sentencing range for all counts would be lower than the sentencing range that would be imposed had Defendant only pled and been sentenced to the last two counts. Under the Ortland analysis, Defendant would be subject to a sentencing range of ten to sixteen months for all five counts. Had Defendant only pled and been sentenced to the last two counts, he would be subject to a sentencing range of twelve to eighteen months because the 1990 through 1992 losses would be considered relevant conduct. This Court does not expect that the Seventh Circuit would agree with an analysis that results in less time for more crime.

Id. at 1317. [4]

Only two circuits have held that §1B1.11(b)(3) presents an *ex post facto* problem. See United States v. Ortland, 109 F.3d 539, 546 (9th Cir. 1997) (holding that the application of §1B1.11(b)(3) to sentence defendant under amended guideline for all five counts of conviction, four of which occurred prior to guideline amendment, violated the *ex post facto* clause); United States v. Bertoli, 40 F.3d 1384, 1404 (3d Cir. 1994) ("The fact that various counts of an indictment are grouped cannot override ex post facto concerns."). Accord, United States v. Johnson, Nos. 97-CR-206, 98-CR-160, 1999 WL 395381 (N.D.N.Y. June 4, 1999), aff'd, United States v. Johnson, 221 F.3d 83 (2d Cir. 2000).

We agree with the reasoning of the Eighth, Eleventh, Fifth, Seventh, First and Fourth Circuits and conclude that the application of guidelines policy

---

[4]The district court correctly predicted that the Seventh Circuit would not follow the Ortland analysis. See Vivit, 214 F.3d at 919.

-12-

statement §1B1.11(b)(3) to all of Mr. Sullivan's willful failure to file tax counts

does not violate the *ex post facto* clause. As indicated above, the central concern

of the *ex post facto* clause is fair notice to a defendant that the punishment for a

crime has been increased from what it was when the crime was committed. Mr.

Sullivan was on notice even when he committed his first two tax offenses that the

Sentencing Guidelines would determine his base offense level from the total tax

loss occurring from all years in which he failed to pay taxes. Moreover, the

grouping rules and the relevant conduct provisions gave him notice that his three

consecutive failures to file would be considered part of the same course of

conduct and would collectively determine his sentence. [5] As the Seventh Circuit

observed, "[t]he grouping rules, enacted in 1987, provide warning to criminals

that completing another criminal offense similar to one committed previously

places them in peril of sentencing under a revised version of the Guidelines."

Vivit, 214 F.3d at 919. When Mr. Sullivan committed his last failure to file, post-

amendment, he was on notice that losses from his first two failures to file would

---

[5]In the commentary to the relevant conduct provisions of the guidelines, the Commission's discussion of "same course of conduct" includes the following example: "a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals." U.S.S.G. §1B1.3, comment. (n.9(B)).

either be grouped with his latest offense or be considered as relevant conduct, and that the penalty for his grouped tax offenses had been increased.

We further agree with the Eighth and Eleventh Circuits that, while failure to file a tax return is not a continuing offense even if committed in successive years, a series of such failures to file is the "same course of conduct" under the guidelines. The "same course of conduct" is analogous to a continuing offense like conspiracy, the ending date of which determines the applicable sentencing guidelines. Finally, like those courts, we are also persuaded by the Commission's recognition of the anomaly that could result if we applied the pre-amendment guidelines to all of Mr. Sullivan's counts of conviction: he "could be subject to a lower sentence if convicted of multiple offenses spanning a revision of the Sentencing Guidelines, than if convicted of the singular last offense after the revision of the Sentencing Guidelines." Cooper, 35 F.3d at 1252. We therefore conclude that the application of §1B1.11(b)(3) to sentence Mr. Sullivan for all counts under the amended guidelines did not violate the *ex post facto* clause.

## II.  Calculation of Loss

U.S.S.G. §2T1.1(c)(2) governs the calculation of tax loss for the willful failure to file a tax return.  It provides in part:

> (2)     If the offense involved failure to file a tax return, the tax loss is the amount of the tax that the taxpayer owed and did not pay.
> <u>Note</u>:  If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income . . . less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made.

The commentary to §2T1.1 states that the "presumption" of §2T1.1(c)(2) is "to be used unless the government or defense provides sufficient information for a more accurate assessment of the tax loss."  U.S.S.G. §2T1.1, comment. (n.1).  That commentary further recognizes that there may be situations where the tax loss "may not be reasonably ascertainable."     <u>Id.</u>  "[A]lthough the government bears the burden at sentencing of proving the amount of tax loss flowing from the defendant's illegal acts, neither the government nor the court has an obligation to calculate the tax loss with certainty or precision."      <u>Spencer</u>, 178 F.3d at 1368 (citations omitted).

At trial, the government and Mr. Sullivan entered into a stipulation that Sullivan's Rat Hole Drilling had the following gross business receipts:  $606,000 in 1991, $564,765 in 1992 and $517,253 in 1993.  They also stipulated that the business paid the following expenses:  $424,200 in 1991, $395,336 in 1992 and

-15-

$362,007 in 1993.   See R. Vol. 1 at Doc. 47.  The stipulation provided that it "is for purposes of the criminal trial only, and does not bind either party in any post trial matters or any civil proceeding."   Id.

In the presentence report, the probation officer determined that the tax loss was $337,603:  "[p]ursuant to U.S.S.G. §2T1.1(c)(2), the tax loss for the years 1991 through 1993 is 20% of [Mr. Sullivan's] $1,688,017.20 gross income or $337,603.44."  PSR at 7, R. Vol. 8.  Mr. Sullivan objected to the PSR's use of the 20% figure because it "failed to include allowable trade and business deductions."  Addendum to PSR (Objections) at i, R. Vol. 8.  The probation officer responded that the PSR's tax loss figure should be used because "the defendant has failed to demonstrate that the tax loss information in the Presentence Report is inaccurate."  Id. at ii.

At sentencing, the government introduced as an exhibit the gross income figure to which the parties stipulated at trial.  Mr. Sullivan objected that it "shows only gross income."  Tr. of Sentencing at 32, R. Vol. 7.  The government's response was as follows:

> As far as the deductions, again I will state that the guidelines say very clearly that you take 20 percent of the gross income unless you've got better figures.  The defendant destroyed his records.  The defendant would not provide information as far as his deductions. And although the Government has records of what expenses were and those records were turned over to the defense, there's been no attempt in the last four months to sit down and — everything was intermingled — personal expenses, business expenses — as to what

-16-

was paid for how, what was paid for in cash. There's simply no way of determining that with any degree of accuracy.

And therefore, the Court is forced to fall back on the flat 20 percent figure, which is probably not a perfect number but it is the best we can do in this case and that's because of the defendant's lack of cooperation.

Id. at 40. After hearing argument from both sides on the issue, the court held it would follow the 20% figure, using the stipulated gross income figures: "[A]t this point I don't believe the Court has before it information that assures the Court that a more accurate determination of the tax loss can be made . . . in this matter. Certainly I don't have the materials before me that would lead to that nor is there any present ability to arrive at that kind of calculation." Id. at 50.

We affirm the district court's use of the 20% figure. The guidelines state that the tax loss in a failure to file offense is 20% of the gross income " unless a more accurate determination of the tax loss can be made." U.S.S.G. §2T1.1(c)(2) (emphasis added). After listening to arguments and reviewing exhibits and proposed exhibits on the matter, the court found that it could not determine a more accurate tax loss figure. Bearing in mind that we review the court's factual findings for clear error, and that we must give "'due deference' to the district court's application of the guidelines to the facts," Spencer , 178 F.3d at 1367 (quoting United States v. Henry , 164 F.3d 1304, 1310 (10th Cir.), cert. denied ,

527 U.S. 1029 (1999)), we perceive no clear error in the district court's computation of tax loss.

### III. Effect of Apprendi

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 120 S. Ct. at 2362-63. We have not yet ruled on whether Apprendi extends to sentencing guideline factors. Mr. Sullivan concedes that the law in this circuit currently states that sentencing guideline factors need not be alleged in the indictment or found by the jury. See United States v. Frederick, 897 F.2d 490, 491-93 (10th Cir. 1990). Other circuits have held that Apprendi does not apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum. See United States v. Hernandez-Guardado, 228 F.3d 1017 (9th Cir. 2000); United States v. Corrado, 227 F.3d 528 (6th Cir. 2000); United States v. Meshack, 225 F.3d 556 (5th Cir. 2000), cert. denied sub nom. Parker v. United States, 121 S. Ct. 834 (2001), amended on rehr'g in part by, 244 F.3d 367 (5th Cir. 2001); United States v. Aguayo-Delgado, 220 F.3d 926 (8th Cir.), cert. denied, 121 S. Ct. 600 (2000). We agree with those circuits. Since the tax loss calculation and two-level increase for sophisticated

concealment did not increase Mr. Sullivan's sentence beyond the statutory maximum of 12 months for each count of failure to file, his sentence does not run afoul of the rule in Apprendi.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's sentence for Mr. Sullivan.

No. 00-8012, United States v. Johnnie C. Sullivan.

**KELLY** , Circuit Judge, dissenting.

Given that neither the facts nor the law have changed, I respectfully dissent from the opinion on rehearing. The initial panel opinion correctly held that application of post-1993 amendment guidelines to the two counts occurring before that amendment violates the ex post facto clause. United States v. Sullivan , 242 F.3d 1248, 1254 (10th Cir. 2001); accord United States v. Bertoli , 40 F.3d 1384, 1404 (3rd Cir. 1994). Despite the Sentencing Commission's approval of this practice in U.S.S.G. § 1B1.11(b)(3), we are dealing with three discrete failure-to-file counts where guilt was determined by a jury on each count, rather than a sentencing enhancement on a post-amendment count or a sentence for a continuing offense spanning an amendment.

The ex post facto clause prohibits application of a law that increases the punishment for an offense after that offense has been committed. Rogers v. Tennessee , 121 S. Ct. 1693, 1697 (2001). The ex post facto clause is concerned with notice and governmental restraint–increasing the punishment for an offense beyond what was available when the crime was committed does not comport with either value. Lynce v. Mathis , 519 U.S. 433, 441 (1997). Here, application of the amended guideline to pre-amendment offenses satisfies both requirements of an ex post facto prohibition: it is both retrospective–it applies to failure-to-file

offenses occurring before its enactment–and it disadvantages Mr. Sullivan by increasing the punishment for those pre-amendment offenses.     See id.

The court determines that Mr. Sullivan had sufficient notice to avoid     ex post facto concerns because he would be deemed to know that (1) his sentence would be determined based upon the guidelines in effect at sentencing, 18 U.S.C. § 3553(a)(4)(A); U.S.S.G. § 1B1.11(a); (2) any sentence would be based upon total tax loss, U.S.S.G. §§ 2T1.2, 2T4.1 (Tax Table) (Nov. 1992) (pre-amendment); and (3) offenses stemming from similar conduct will be grouped, U.S.S.G. §§ 3D1.1 & 3D1.2, or considered relevant conduct, U.S.S.G. §§ 1B1.3(a)(2) & (a)(3).

Of course, the only notice this provides at the time of commission of the first two, pre-amendment offenses is that the sentence could be determined in accordance with guideline provisions that may or may not be amended.  Even if the notice is sufficient to inform a defendant that the last offense could determine the sentence, only a defendant with the prescience of a clairvoyant could anticipate an actual sentence based upon a yet-to-be amended guideline.

This plainly is not sufficient notice under     Miller v. Florida  , 482 U.S. 423 (1987).  Miller  involved post-offense amendments to state sentencing guidelines that raised a defendant's presumptive sentence to 5.5 to 7 years, from 3.5 to 4.5 years.  The trial court applied the guidelines in effect at sentencing and imposed a

7-year sentence. The Supreme Court determined that application of the amended guidelines to the defendant violated the ex post facto clause. Id. at 435-36. In rejecting the state's argument that the guidelines scheme provided fair notice that it might be amended, the Court stated:

> Here . . . the statute in effect at the time petitioner acted did not warn him that Florida prescribed a 5 ½ -to 7-year presumptive sentence for that crime. Petitioner simply was warned of the obvious fact that the sentencing guidelines law–like any other law–was subject to revision. The constitutional prohibition against *ex post facto* laws cannot be avoided merely by adding to a law notice that it might be changed.

Id. at 431. Likewise, in this case, the pre-amendment guidelines simply did not provide adequate, quantitative notice of the post-amendment penalty associated with the pre-amendment counts.

Because of this problem, it is necessary to view the penalty as originating from the third, post-amendment offense, as enhanced by the first two, pre-amendment offenses. But for the ex post facto problem, such an artificial construction (which ignores that Mr. Sullivan was convicted by a jury of three discrete counts and sentenced on each count) would be unnecessary. See United States v. Ortland, 109 F.3d 539, 547 (9th Cir. 1997).

Finally, the notion that Mr. Sullivan might be under-punished were the pre-amendment guidelines applied to all three offenses is misplaced. The narrowly tailored solution to the ex post facto problem, applying the pre-amendment guideline to the two pre-amendment offenses, and the post-amendment guideline

-3-

to the post-amendment offenses, obviates the notion that he will receive a

windfall not mandated by ex post facto concerns. <u>Sullivan</u>, 242 F.3d at 1254.