F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Respondent-Appellee,

v.

EVAN MITCHELL ANDERSON,

Petitioner-Appellant.

No. 00-4118
(D.C. Nos. 97-CV-300-S &
89-CR-172-S)
(D. Utah)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR** and **McKAY** , Circuit Judges, and **BRORBY** , Senior Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Evan Mitchell Anderson appeals from an order of the district court denying relief on his petition filed pursuant to 28 U.S.C. § 2255. We affirm in part, reverse in part, and remand for further proceedings.

Petitioner was convicted by a jury on six counts, all related to petitioner's production of methamphetamine. His case was affirmed by this court on direct appeal. *See United States v. Anderson*, 940 F.2d 593 (10th Cir. 1991). Petitioner's § 2255 motion was referred to a magistrate judge who recommended that it be denied. Petitioner objected to this recommendation and requested leave to amend the motion. The district court adopted the report and recommendation of the magistrate judge in its entirety and denied leave to amend. Petitioner appeals. [1]

On appeal, petitioner argues that the district court erred in denying him relief because of ineffective assistance of counsel. Specifically, he argues that counsel failed to require the government to prove which isomer of methamphetamine he had produced, l-methamphetamine or d-methamphetamine; he failed to object to the inclusion of two specific quantities of the precursor chemical l-ephedrine in the calculation of his sentence, and failed to present

---

[1] The district court also granted petitioner a certificate of appealability. We read that certificate to include the issue of whether the district court abused its discretion in denying petitioner leave to amend his § 2255 motion.

-2-

evidence of a lower conversion ratio. Petitioner also argues that the district court wrongly refused him leave to amend his motion.

When reviewing the district court's denial of a § 2255 motion, we review the district court's legal ruling de novo and its factual findings for clear error. *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998). We will not find that counsel has been ineffective unless his or her performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and we find it reasonably probable that "but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

Type of methamphetamine isomer

At the time of petitioner's sentence, the sentencing guidelines treated manufacture of l-methamphetamine much less severely than manufacture of d-methamphetamine. *See, e.g., United States v. Dudden*, 65 F.3d 1461, 1470 (9th Cir. 1995). We therefore first consider petitioner's claim that his attorney should have objected to his sentence calculation based on "d" rather than "l" methamphetamine and that petitioner should have been afforded an evidentiary hearing in his § 2255 proceeding in district court in order to establish which type of isomer he had produced. In order to obtain a conviction, the government need only prove that the substance involved was methamphetamine. *United States v.*

*Deninno*, 29 F.3d 572, 579-80 (10th Cir. 1994). At the time of petitioner's sentencing, the need to distinguish between "d" and "l" methamphetamine applied only at the sentencing phase where the government was required to prove the type of methamphetamine only by a preponderance of the evidence. *Id.* at 580. [2] Circumstantial evidence is sufficient to meet this burden. *United States v. Glover*, 97 F.3d 1345, 1350 n.5 (10th Cir. 1996).

Here, there was considerable circumstantial evidence regarding the type of isomer produced by petitioner. Petitioner had purchased 37,000 grams of the precursor chemical l-ephedrine from a supplier in Colorado some months before his arrest. When law enforcement officials raided his lab, they confiscated l-ephedrine and other chemicals used in the manufacture. While there was no direct evidence that petitioner had produced d-methamphetamine, there was testimony from a DEA chemist that petitioner used the manufacturing method involving the reduction of ephedrine with hydriodic acid and red phosphorus. R. Supp. Vol. V at 110. When this method is used with l-ephedrine, d-methamphetamine is produced. *United States v. Decker*, 55 F.3d 1509, 1512 (10th Cir. 1995) (relying on testimony that the l-ephedrine method produces

---

[2] The distinction between the two methamphetamine isomers for sentencing purposes was eliminated in a sentencing guideline amendment effective November 1, 1995. Now all methamphetamine is treated as "d" methamphetamine. *United States v. Svacina*, 137 F.3d 1179, 1186 (10th Cir. 1998).

d-methamphetamine).  There is no evidence that petitioner possessed anything other than l-ephedrine.  Further, a user of his product testified that the drug gave her high levels of energy and kept her awake.   [3]  We find this evidence to be more than sufficient to establish that petitioner produced d-methamphetamine thus rendering any evidentiary hearing in the district court unnecessary,     *see United States v. Marr*  , 856 F.2d 1471, 1472 (10th Cir. 1988) (observing that no evidentiary hearing is required "where the district court finds the case record conclusively shows the prisoner is entitled to no relief").  Any effort by petitioner's counsel to require the government to adduce more proof regarding the type of isomer manufactured by petitioner would not have changed the outcome of petitioner's case.  He has therefore not suffered the prejudice necessary to sustain a claim of ineffective assistance of counsel.     *See Strickland*  , 466 U.S. at 687.

Amounts of l-ephedrine attributable to petitioner

Petitioner next argues that two distinct amounts of l-ephedrine, seized by authorities at different times, should not have been included in the overall amount of l-ephedrine he possessed for sentencing purposes and that counsel was

---

[3]     L-methamphetamine would not have produced such a reaction because it is nearly inert and produces only "minor physiological effects."     *United States v. Decker* , 55 F.3d 1509, 1510 (10th Cir. 1995).

ineffective for not seeing that these amounts were excluded from the calculations. We find no merit in this argument.

The original presentence report (PSR) included the 37,000 grams petitioner had purchased in Colorado as well as the other two discrete amounts to arrive at a total of slightly more than 48,000 grams. PSR at 5. Defendant, presumably through his attorney, objected to this amount, arguing that the two separate seizures were part of the original 37,000 grams from Colorado. The PSR was revised to reflect possession of only 37,000 grams. The testimony of the DEA chemist that petitioner could produce 29 kilograms of methamphetamine was based on 37,000 grams of l-ephedrine. R. Supp. Vol. V at 128. Petitioner was sentenced based on the manufacture of 29 kilograms. We fail to see the point of petitioner's sentencing argument. Because these two amounts were not included in the calculus of petitioner's sentence, there is no double jeopardy issue nor any issue based on relevant conduct.

Petitioner's contention that the two amounts should be subtracted from the 37,000 grams finds no support in the record. In fact, subtracting those amounts from the 37,000 grams would result in their being excluded twice for sentencing purposes. Most importantly, this court on direct appeal found no error in the district court's reliance on the 37,000 gram/29 kilogram amounts in arriving at petitioner's sentence. *Andersen*, 940 F.2d at 597. Although cloaked in the

guise of an ineffective assistance claim, this is the same issue decided on direct appeal and cannot be raised again in a § 2255 motion.    *United States v. Cox*, 83 F.3d 336, 342 (10th Cir.1996).

Conversion ratio

At petitioner's trial, the DEA chemist implied that an 80 percent conversion ratio was appropriate to determine how much methamphetamine could be manufactured from 37,000 grams of l-ephedrine.  In his § 2255 proceeding, petitioner offered a letter from Howard McClain, Jr., the chief of the Drug Control Section of the DEA, dated some six weeks after petitioner was sentenced, indicating that a conversion ratio of 62.5 percent would be appropriate.  Petitioner argues that his counsel was ineffective for failing to produce this type of evidence at his sentencing.

In response to this argument, the district court ordered additional briefing from the government "as to how the calculation of petitioner's sentence would be affected if ONLY the lower conversion rate noted in the letter of Howard McClain, Jr., of the DEA were applied instead of the 80% rate actually applied[.]" R. Vol. I doc. 24.  In its response, the government stated:  "[T]he only conversion rate that should be used in this case, assuming Mr. McClain's observations regarding conversion ought to be applied retroactively in petitioner's case, a position the Magistrate rejected, but the government, in fairness, does not

contest, is what McClain referred to as the 'average actual yield.'" *Id.* doc. 25 at 2. The "average actual yield" referred to in the McClain letter is 62.5 percent.

Applying the 1989 guidelines, the government concluded that petitioner's sentence would remain the same irrespective of which conversion ratio was used. The district court, therefore, rejected the contention that petitioner's counsel had been ineffective based on his failure to present evidence regarding an alternate conversion ratio. In its brief to the district court, however, the government analyzed the issue using the incorrect guidelines.

Generally, a sentencing court must apply the guidelines in effect at the time of the sentencing unless doing so would create ex post facto problems. *United States v. Sullivan,* No. 00-8012, 2001 WL 777000, at * 2 (10th Cir. July 11, 2001) ( *to be published at* 255 F.3d 1256). The 1989 guidelines became effective on November 1, 1989, before petitioner's sentencing but after petitioner's criminal conduct had occurred. Under the 1988 guidelines, one gram of methamphetamine equaled two grams of cocaine for sentencing purposes. *U.S. Sentencing Guidelines Manual, Drug Equivalency Tables* at 2.42 (1988). The 1989 guidelines raised that ratio, equating one gram of methamphetamine with five grams of cocaine. *U.S. Sentencing Guidelines Manual, Drug Equivalency Tables* at 2.48 (1989). Thus, sentencing petitioner under the 1989 guidelines for conduct which occurred before those guidelines became effective

would subject him to harsher punishment than he would have received at the time the offenses had been committed.  This is a classic ex post facto problem. *See Sullivan* , 2001 WL 777000, at *2.  Petitioner, therefore, should have been, and probably was, sentenced under the 1988 guidelines.     [4]  Had the government relied on the correct version of the guidelines in its brief to the district court analyzing the effect of the 62.5 percent conversion ratio, it could not have concluded that the sentences would be the same under either ratio.  Under the 1988 guidelines, petitioner would have received a lesser sentence had the 62.5 percent conversion ratio been used.

That aside, we have found no law dealing with the proper conversion ratio in methamphetamine cases available to counsel at the time of petitioner's sentencing.  In view of the concession by the government, however, that 62.5 percent was a fair ratio and should be applied, we remand for an evidentiary hearing to determine whether this data or any conversion rate information less than the 80 percent adduced at trial was reasonably available to petitioner's attorney at the time of the trial or sentencing such that his failure to acquire such information would constitute ineffective assistance of counsel.

---

[4]     We are unsure whether the sentencing court used the 1988 guidelines or the 1989 version because the transcript of the sentencing proceeding is not included in the record on appeal.  We agree with the surmise of the magistrate judge, however, that because of the potential ex post facto problem, the sentencing court most likely relied on the 1988 guidelines.  R. Vol. I, doc. 18 n.3.

Guideline Application

Petitioner argues that he was sentenced under the wrong edition of the sentencing guidelines. As noted above, we suspect that was not the case. It may not matter, however, because if petitioner was responsible for 37,000 grams of l-ephedrine and 29 kilograms of methamphetamine based on an 80 percent conversion ratio, petitioner's sentence is the same under either version of the guidelines. It is only when one accepts petitioner's arguments that the l-ephedrine amount should be less than 37,000 grams and/or, as discussed above, that the conversion ratio should be less than 80 percent that different sentences can result.

We have rejected the argument that the l-ephedrine should be less than 37,000 grams. However, we are remanding this case to determine whether counsel was ineffective in failing to present evidence of a conversion rate of less than 80 percent. If, after an evidentiary hearing, the district court concludes that petitioner's counsel was ineffective for failing to present reasonably available evidence of a lower conversion rate, the district court should then determine the proper conversion rate and resentence petitioner under the 1988 guidelines.

Denial of Leave to Amend

As mentioned above, in conjunction with his objections to the report and recommendation of the magistrate judge, petitioner also requested leave to amend his complaint to add a claim based on the *Apprendi/Jones/Castillo* [5] line of cases. The district court, without comment, denied leave to amend.

"[T]he decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion, Fed. R. Civ. P. 15(a), and will not be disturbed absent an abuse of that discretion." *Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir. 1994) (quotation omitted). Generally, a court must explain why permission to amend has been denied. *Id.* However, "failure to state a reason can be harmless error where the reason is apparent." *Id.* (quotation omitted).

Leave to amend should be freely given in the absence of a good reason not to allow amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). One good reason not to allow amendment is when the amendment will be futile. *Id.* That is the situation facing petitioner.

Since petitioner's request for leave to amend and, indeed, since the filing of the appellate briefs, this court has made it clear that petitioner could not prevail

---

[5] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Jones v. United States*, 526 U.S. 227 (1999); *Castillo v. United States*, 530 U.S. 120 (2000).

on the substance of the *Apprendi* argument he wished to include in his § 2255 petition. Subparagraph (b)(1)(C) of 28 U.S.C. § 841 states that "[i]n the case of a controlled substance in schedule I or II, . . . such person shall be sentenced to a term of imprisonment of not more than 20 years." Methamphetamine is a schedule II controlled substance. *United States v. Killion*, 7 F.3d 927, 935 (10th Cir. 1993). Because petitioner was sentenced to 220 months' imprisonment, his sentence is less than the twenty-year statutory maximum for the offenses of which he was convicted. Under our recent holdings in *United States v. Thompson*, 237 F.3d 1258, 1262 (10th Cir.), *cert. denied*, 121 S. Ct. 1637 (2001) and *United States v. Heckard*, 238 F.3d 1222, 1235-36 (10th Cir. 2001), petitioner's case does not present an *Apprendi* violation. Amendment of the petition, therefore, would have been futile, and it was not an abuse of discretion to deny leave to amend. Because the reason for denial is apparent, the district court's failure to explain its denial was harmless error. [6]

---

[6] Contrary to petitioner's suggestion, this case differs from *United States v. Gorecki*, No. 95-4129, 1996 WL 211740 (10th Cir. Apr. 30, 1996), where the defendant was entitled to leave to amend as a matter of right.

The judgment of the United States District Court for the District of Utah is AFFIRMED in part, and REVERSED in part, and REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Wade Brorby
Senior Circuit Judge