

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2003

# USA v. Vlanich

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2264

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Vlanich" (2003). *2003 Decisions.* Paper 255.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/255

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-2264 and 01-2315

UNITED STATES OF AMERICA

v.

DEBRA VLANICH,
Appellant at No. 01-2264

UNITED STATES OF AMERICA

v.

RONALD AMATI,
Appellant at No. 01-2315

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Criminal Nos. 00-cr-00059-2 & 00-cr-00059-1
(Honorable Gustave Diamond)

Argued July 12, 2002

Before: SCIRICA,* <u>Chief Judge</u>, GREENBERG, <u>Circuit Judge</u>,
and FULLAM,** <u>District Judge</u>

(Filed: September 24, 2003)

*Judge Scirica began his term as Chief Judge on May 4, 2003.

**Hon. John P. Fullam, Senior Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

J. ALAN JOHNSON, ESQUIRE (ARGUED)
CYNTHIA R. EDDY, ESQUIRE
Johnson & Eddy
1720 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

 Attorneys for Appellant, Debra Vlanich

EFREM M. GRAIL, ESQUIRE (ARGUED)
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219

 Attorney for Appellant, Ronald Amati

KIRBY A. HELLER, ESQUIRE (ARGUED)
United States Department of Justice
Criminal Division, Appellate Section
601 D Street, N.W., Suite 6206
Washington, D.C. 20530

BONNIE R. SCHLUETER, ESQUIRE
JAMES R. WILSON, ESQUIRE
Office of United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA 15219

 Attorneys for Appellee

-------

OPINION OF THE COURT

-------

FULLAM, *Senior Judge*

After a month-long trial in the United States District Court for the Western District

of Pennsylvania, Ronald Amati and his friend Debra Vlanich were convicted of

2

conspiring to operate an illegal gambling business, in violation of 18 U.S.C. §371. In addition, Amati, who held office as a District Justice, was convicted of conducting such an illegal gambling business, in violation of 18 U.S.C. §1955, and also of conspiring to obstruct the enforcement of Pennsylvania's criminal laws, with the intent of facilitating an ongoing illegal gambling business while he was an elected state official, in violation of 18 U.S.C. §1511. Mr. Amati was sentenced to 42 months imprisonment, and Ms. Vlanich was sentenced to pay a substantial fine and undergo two years probation. Both appellants challenge their convictions, and Amati also raises sentencing issues.

We conclude that the appellants' convictions should be affirmed, but that Amati's case should be remanded for re-sentencing.

## BACKGROUND

It is undisputed that, during the period specified in the indictment, an illegal gambling operation (video-poker machines) was conducted at a coffee shop in Finleyville, Pennsylvania. It is also undisputed that the defendant Amati was a co-owner of that coffee shop, and received a share of the profits from the gambling business. It is also clear, however, that other persons involved in setting up and running the gambling operation were law-enforcement agents or confidential informants utilized by the Government in a "sting" operation.

Sometime in 1997, a gentleman named Robert Hansen, who earlier in life had himself operated an illegal video-poker establishment, became convinced that such

3

gambling was indeed evil (his own son had frittered away college tuition funds in video-poker gambling). Hansen approached the Pennsylvania State Police and offered his services in eradicating such illegal activities. A state police officer named Anthony Cornetta was assigned to conduct an undercover investigation.

Mr. Hansen had previously been acquainted with the defendant Amati, and knew that Mr. Amati had previously been involved in video-poker enterprises. Mr. Hansen presented Trooper Cornetta (posing as one "Tony Carmassi") to Amati as a person who was interested in establishing a video-poker business. Amati agreed to help them in their proposed enterprise. Eventually, through the efforts of Mr. Amati, the three men became co-owners of the Finleyville Coffee Shop, with its video-poker machines.

Because of Mr. Amati's position as a District Justice, he carefully avoided being seen at the coffee shop or overtly participating in its affairs. The day-to-day conduct of the gambling business was handled by Trooper Cornetta and, to some extent, Mr. Hansen.

Mr. Amati's position as a District Justice sometimes enabled him to learn when state or local police were about to raid a gambling establishment -- as, for example, when he was asked to issue a search warrant -- and at least on one occasion he alerted Cornetta and Hansen to the desirability of removing the video-poker machines for a brief period. Eventually, however, police did conduct a raid at the Finleyville Coffee Shop, and seized the poker machines then present.

## I. Validity of Appellants' Convictions

4

The governing statute, 18 U.S.C. §1955, makes it a federal crime to participate in the conduct of an illegal gambling business only if five or more persons are involved in the activity, and the business is in continuous operation for at least thirty days. Both defendants challenge the sufficiency of the evidence to establish the requisite number of persons involved, and also contend that the statute exceeds Congress' powers under the Commerce Clause of the United States Constitution. Both defendants also assert that federal jurisdiction was obtained only as the result of impermissible manipulation by Government agents, and/or that they were entrapped into committing the offenses.

A. Constitutionality of 18 U.S.C. §1955

This court has long held that §1955 is constitutionally valid. *United States v. Riehl*, 460 F.2d 454 (3d Cir. 1972); *United States v. Ceraso*, 467 F.2d 653, 657-658 (3d Cir. 1972). And, contrary to appellants' argument, we are satisfied that the continued validity of these cases has not been undermined by the decisions of the United States Supreme Court in *United States v. Lopez,* 514 U.S. 549 (1995), *United States v. Morrison*, 529 U.S. 598 (2000) and *Jones v. United States*, 529 U.S. 848 (2000). Large-scale gambling obviously has commercial implications not present in the cases cited by appellants. All of the circuit courts of appeal which have considered the issue since *Lopez* have concluded that Section 1955 continues to be valid under the Commerce Clause. See *United States v. Lee*, 173 F.3d 809 (11th Cir. 1999); *United States v. Boyd*, 149 F.3d 1062 (10th Cir. 1998); *United States v. Zizzo*, 120 F.3d 1338 (7th Cir. 1997);

5

and *United States v. Wall*, 92 F.3d 1444 (6th Cir. 1996). We therefore reject appellants' constitutional arguments.

B. The Requisite Number of Participants

During the period covered by the indictment, in addition to the three owners, Amati, Cornetta and Hansen, the following persons participated, at least to some extent, in the illegal operation: the owner/lessor of the poker machines; an employee of the owner of the poker machines, who serviced and maintained them, Debra Vlanich, and three waitresses. The Government concedes, as it must, that neither Cornetta nor Hansen may be counted toward the five required participants. Under any view of the matter, therefore, the required total of five participants can be reached only if one includes at least one of the three waitresses, and also includes both the owner of the poker machines and the mechanic who serviced them.

Appellants argue first that the waitresses did not actually participate in the illegal gambling operation, since they merely served coffee and breakfast to the gamblers. There was, however, ample evidence to permit the jury to conclude that the waitresses were actively involved in handling payoffs and resetting the machines from time to time. It is also clear that, although the operation did not require the participation of three waitresses at any given time, it was reasonably necessary to engage the services of more than one waitress.

Appellants further argue that none of the waitresses should properly be counted

6

among the five required participants because they were hired by Trooper Cornetta, in his capacity as the manager of the restaurant. Thus, according to appellants, either the waitresses were Government agents themselves, or, at the very least, the Government manufactured federal jurisdiction by hiring them in order to achieve the required total of five participants. We reject these contentions. Amati and the two undercover Government agents purchased a going business which had video-poker machines and employed three waitresses. The scope of the operation was not expanded by Cornetta and Hansen. Mr. Amati was well aware of the number and identity of employees, and of the active involvement of the waitresses in the day-to-day conduct of the gambling enterprise.

We are satisfied, therefore, both that the waitresses can properly be included in achieving the total of five or more participants, and that their inclusion does not support a charge that federal jurisdiction was artificially created.

C. Entrapment

(a) Debra Vlanich

Ms. Vlanich contends that several errors were made with respect to her proffered defense of entrapment. The defense theory was that Ms. Vlanich was a lonely widow, unusually vulnerable to male blandishments, and was led astray by the attentions of Trooper Cornetta who allegedly "wined and dined" her on various occasions. Because it was disclosed before trial that Ms. Vlanich would be claiming entrapment, the Government was allowed, during its case in chief, to present evidence of her earlier

7

involvement in illegal gambling activities. She and her late husband had long operated a bar-restaurant with illegal video-poker machines.

At trial, in support of her entrapment theory, Ms. Vlanich sought to present the testimony of mental-health experts to the effect that, as a result of her widowhood and lonely existence, Ms. Vlanich was unusually susceptible to male attention in social situations. The district judge ruled that the proffered psychiatric evidence was inadmissible under the Insanity Defense Reform Act of 1984, 18 U.S.C. §17(a) because it did not constitute evidence that the "defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of [her] acts". As noted by this court in *United States v. Pohlot*, 827 F.2d, 889, 896 (3d Cir. 1987) Section 17(a) does not bar all evidence of mental disease or defect other than that applicable to an insanity defense, but the use of such evidence is strictly limited to that which "negates specific intent or any other *mens rea*, which are elements of the offense." *Id.* at 890.

It is clear that the proffered expert testimony did not purport to show that Ms. Vlanich was legally insane or incapable of forming the intent to commit the crime charged; the real issue is whether Section 17(a) renders such evidence inadmissible to show that Ms. Vlanich was unusually susceptible to inducement. A related issue is whether, regardless of Section 17(a), the proffered evidence in this case could properly have been excluded under Federal Rule of Evidence 704 because of its minimal probative value and the likelihood of confusing the jury because of the close similarity to a

8

proscribed "diminished capacity" defense. After excluding the proffered expert testimony, the district judge ultimately ruled that, as a matter of law, the evidence did not support an entrapment defense on behalf of Ms. Vlanich.

On appeal, Ms. Vlanich contends (1) it was error to admit evidence of previous criminal involvement, (2) it was error to exclude the proffered expert testimony, and (3) it was error to refuse an entrapment charge. If the evidence of Ms. Vlanich's previous criminal activity would have been inadmissible except to refute her defense of entrapment, a contention that this evidence should not have been received unless entrapment issues were to be submitted to the jury might well have at least arguable merit. To permit the Government to introduce damaging evidence during its case in chief for the sole purpose of refuting a non-issue seems indeed likely to impair the fundamental fairness of the trial.

In the present case, however, there was no error. Evidence of Ms. Vlanich's earlier involvement in the video-poker industry consisted of her own statements, recorded by the undercover operatives during the formation and conduct of the conspiracy. Ms. Vlanich was enthusiastic about the prospects of success of the Finleyville Coffee Shop, and encouraged Cornetta and Hansen to proceed with Mr. Amati's proposals because she and her late husband had made so much money in their earlier venture. Thus, the evidence of her previous criminality was clearly admissible, not only because it demonstrated her own familiarity with the "ins and outs" of video-poker gambling (thus,

9

her "knowledge" under Rule 704) but also because it bore directly upon the formation of the conspiracy charged in the indictment.

With respect to the admissibility of the expert testimony, we find it unnecessary to consider whether the proffered testimony was admissible in support of an entrapment defense, because the trial court properly ruled that, as a matter of law, an entrapment defense was not available to Ms. Vlanich, and this ruling was not affected by exclusion of the proffered expert testimony.

The undisputed facts establish that no Government agent induced Ms. Vlanich to participate in the conspiracy. She was introduced to the operation by her paramour, Mr. Amati, and acted at his request and pursuant to his instructions at all times. Thus, unless Mr. Amati himself was entrapped -- an issue which will be addressed below -- there is simply no basis for charging the Government with having induced Ms. Vlanich to participate.

In addition, of course, the evidence showed conclusively that Ms. Vlanich was predisposed to engage in video-poker activities. Absent proof that the Government induced her criminal behavior, and that she was not predisposed to commit the crime, Ms. Vlanich did not have a defense of entrapment. *United States v. Wright*, 921 F.2d 42; *United States v. Fedroff*, 874 F.2d 178 (3d Cir. 1989).

(b) Ronald Amati

Because the initial overtures for Mr. Amati's participation came from Mr.

10

Hansen and Trooper Cornetta, and because the actual operation of the Finleyville diner was committed to their management, it is understandable that the district court, from an abundance of caution, submitted to the jury the question of whether Mr. Amati was entitled to an entrapment defense. By its verdict, the jury found that he was not entrapped, and there is no basis for disturbing that finding. Indeed, the evidence of Mr. Amati's predisposition was compelling, and amply justified the jury's resolution of the issue.

Appellants' convictions will therefore be affirmed.

## II. Amati's Sentence

As calculated by the Probation Department's Presentence Report (PSR) appellant's total offense level was 16 (base level of 12, with 2 levels added as a result of grouping of the various counts, and an additional 2 levels for abuse of a position of trust), and his criminal history category was I, resulting in a guideline range of 21-27 months. These calculations are not challenged on appeal. At the time of sentencing, however, the district court imposed an additional 4 level upward adjustment under §3B1.1 ("Aggravating Role") and a further upward adjustment of 2 levels because, in the Court's view, appellant had also obstructed justice by committing perjury in the course of his trial. As calculated by the district court, appellant's guideline range was 41-51 months. Appellant was sentenced to 42 months imprisonment, followed by 2 years of supervised release, together with a fine of $7,500.00. Appellant challenges the upward adjustments made by

11

the Court.

A. Role in the Offense

Guideline §3B1.1 provides:

"Based on the defendant's role in the offense, increase the offense level as

follows:

(a)     If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b)     If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c)     If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."

We agree with appellant that the 4-level increase called for by sub-section (a) should not have been applied in this case, because the statute of conviction, 18 U.S.C. §1955, itself requires proof of the factors specified in the guideline, so that imposing the upward adjustment amounts to double counting. The statute of conviction applies to "whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business ..." and defines an illegal business as meaning a gambling business which, *inter alia*, "(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business ..." The base offense level for a violation of §1955 is 12, and is, by its terms, applicable to persons in a leadership

12

role of a gambling enterprise involving five or more persons.  We are confident that the Commission did not intend a 4-level upward adjustment from the stated base offense level predicated upon the very same factors which are essential elements of the crime itself.  Further support for this conclusion is found in the introductory commentary to part B, which states "when an offense is committed by more than one participant, §3B1.1 or §3B1.2 (or neither) may apply".

    B.  The Perjury Enhancement

The district court found that appellant committed willful and intentional perjury in an attempt to support his defense of entrapment, by testifying falsely that Mr. Hansen, the confidential informant, repeatedly sought appellant's help in setting up a gambling business, over a period of many months beginning in early 1997, whereas actually, according to the government, Mr. Hansen first became involved in October, 1997, and became directly involved in the acquisition only in May, 1998.  We review the court's finding for clear error. *United States v. Powell*, 113 F.3d 464, 466, 468 (3d Cir. 1997).

The district court's ruling on this issue is set forth in its Memorandum and Order dated May 10, 2001, in which the district court referred to Amati's testimony that his contacts with Hansen concerning the possible purchase of a restaurant site for video-poker operations began in March 1997, and involved several meetings and discussions thereafter.  Initially, they discussed the possible purchase of an establishment known as "Tee Time," owned by a lady named Maggie Hill.  The district court's finding that this

13

testimony amounted to perjury was based upon the fact that, in a recorded telephone conversation in February 1998, Mr. Hansen professed not to know who Maggie Hill was, and defendant did not express surprise, but merely described Maggie Hill in order to jog Hansen's recollection. Appellant argues, on the other hand, that in an earlier conversation in January 1998, also recorded, it was clear that Mr. Hansen was discussing a person who, in the context, could only have been Mrs. Hill. Appellant also points out that, according to Mr. Hansen himself, he had had discussions with Mr. Amati about possible locations for a video-poker establishment as early as 1993, and, at the very least, long before the October 1997 date of his direct involvement with Mr. Amati in an undercover capacity.

The government's brief on appeal devotes little attention to this issue. At no point, either in the government's brief or in the district court's findings, is the testimony alleged to have been perjurious set forth. *Cf. United States v. Copus*, 100 F.3d 1529, 1536-37 (10th Cir. 1997) (district court should identify specific testimony it found perjurious).

The parties have not included in their appendices the entire testimony of either the appellant Amati or Mr. Hansen. But in the portions of Mr. Amati's testimony relied upon by the government, there is nothing squarely at odds with the recorded telephone conversations referred to by the district court, nor, so far as we are able to determine, is Amati's testimony inconsistent with the testimony of Hansen himself. Mr. Hansen testified that, when he first met with the government agents in connection with this case, the following occurred:

14

"Q. And what is it they asked you to do?

A. They asked me if .. to recontact, I guess, with Mr. Amati and give him an opportunity to see if he would follow through with what he had promised to do before."

Thus, there apparently was no dispute about the fact that appellant and Mr. Hansen had earlier discussed possible acquisition of a site for video-poker activities, and that the eventual renewed contact in October 1997 was just that -- a renewal of earlier discussions.

It should also be noted that, to the extent Amati testified to a meeting with Mr. Hansen in March of 1997, that testimony served to undermine any attempt to establish an entrapment defense, since Hansen was not then a government agent. To regard this testimony as an attempt to obstruct justice seems, therefore, problematical.

A further problem with the district court's finding of perjury is the distinct possibility that what the district court found to have been false was not the actual testimony of appellant, but rather the "spin" placed on that testimony in the closing arguments of trial counsel. Needless to say, appellant cannot be charged with perjury on the basis of his counsel's exaggerations of his testimony, rather than appellant's actual testimony.

Since the case will be remanded for re-sentencing, the district court will have an opportunity to reconsider the perjury issue. We make no final determination on that subject, but merely note that a finding that appellant obstructed justice by false testimony

15

at trial must set forth specifically the testimony found to be false, and must be based upon that testimony itself, rather than counsel's interpretation of the testimony.  We note also that the jury's finding of guilt does not establish that the jury rejected appellant's testimony.

For the reasons set forth above, the convictions of both appellants are affirmed. The sentence imposed on appellant Ronald Amati is vacated, and his case is remanded for re-sentencing.

_____

TO THE CLERK:

Please file the foregoing opinion.


/s/ John P. Fullam
District Judge